# APRIL, 1896.

Missouri, Kansas & Texas Railway Company of Texas v. John H. Belcher.

No. 365.—Decided April 2, 1896.

1. **Special Damages—Notice to Carrier.**

In order to recover special damages from a carrier for delay in transportation, such as depreciation in value of cattle for want of food shipped to feed them, the plaintiff must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of breach of his contract, under circumstances showing that the contract was, to some extent, based upon or made with reference to such conditions.

2. **Same—Notice to Agent—Train-Master.**

Notice of such conditions to a train-master is not notice to the railway company upon a matter under control of the station agent, it not appearing that the train-master had any control over the station agent in the matter of making contracts for shipment, or that it was his duty to communicate to such agent information with reference thereto.

Questions certified by Court of Civil Appeals for Second District, in an appeal from Cooke County.

*R. C. Foster* and *A. E. Wilkinson,* for appellant.

*Yancey Lewis,* for appellee.

DENMAN, Associate Justice.—The Court of Civil Appeals, for the Second Supreme Judicial District, have certified to us the following questions and explanatory statement:

"Appellee was feeding 1650 beeves at Gainesville upon cotton-seed meal and hulls. Being unable to obtain their requisite amount of hulls at Gainesville, he ordered a car shipped from Sherman, over appellant's road. Before the bill of lading was signed by appellant's agent at Sherman, appellee told its agent at Gainesville about ordering the car, and the damage that would result from delay, and asked him to expedite the shipment. When the Gainesville agent received this information, he notified appellant's train-master by telegram, informing the train-master that plaintiff had a carload of cotton-seed hulls at Sherman, and that plaintiff was greatly in need of the feed for his cattle, and to hurry it forward. The Sherman agent could also have been notified in the same way before he received the car or executed the bill of lading, but we can not say from the undisputed evidence that this was done.

The evidence justifies the finding that the hulls were unreasonably delayed, by which the beeves were deprived of their regular food for nearly

two days, thus causing material depreciation in their weight. The evidence does not inform us as to the extent of the powers actually conferred by appellant upon its train-master and station agents, but it does appear from the evidence that the train-master referred to had charge of the movement of all trains south of Denison on appellant's road, except on the Dallas division, and that his duty was to look after and control the movements of said trains; and he also had charge of all agents over his division. We further find from the undisputed evidence, that the train-master had notice of the prospective damage before the delay occurred and in time to have prevented it, but we are unable to conclude from the undisputed evidence that he had such notice before the contract of shipment was made by the agent at Sherman. We further find that the evidence tended to show, and that a jury would be justified in concluding, that such notice was given to the train-master before the contract was made by the agent at Sherman.

Under the foregoing state of facts, we respectfully certify for decision to your Honors, as arising in this case, the following questions:

1. Should notice to the train-master under the foregoing circumstances be regarded as notice to the company, or as binding the latter?

2. If so, as the trainmaster had notice of the prospective damage in time to have prevented it, would this have rendered the company liable, provided such notice was not given until after the contract of shipment had been made by the agent at Sherman? In other words, does the rule which generally obtains in other jurisdictions, where the carrier has the right to regulate his charges by the risks assumed, and which therefore requires notice of special damages to be given before the contract of shipment is made, apply in this State; or can the shipper, by showing negligence on the part of the carrier after notice given subsequent to the making of the contract, hold it, not for the breach of the particular contract, but for the violation of a duty owed him as a part of the public? See Railway v. Levy, 59 Texas, 549.

3. As the evidence tends to show, and the jury would be justified in finding, that the notice was given to the train-master before the agent at Sherman made the contract of shipment, the inquiry would probably become material on another trial, should the second question receive a negative answer: Would notice to the train-master of the prospective damage in time for him to have notified the agent at Sherman before the latter made the contract for the shipment, render the appellant liable?

The third question is certified only in the event of a negative answer to the second, and an answer thereto is respectfully requested, in view of the fact that it would probably become important upon another trial, that justice be not delayed, and in the event that it be found by your Honors to be within the spirit, if not the letter, of the statute authorizing this court to certify questions for decision.

The rule seems to be settled that plaintiff, in order to recover special damages for breach of a contract, must show that at the date of the contract defendant had notice of the special conditions rendering such

damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based upon or made with reference to such conditions. Waller v. Railway, L. R. (Ireland), vol. 4, Q. B. C. P., Ex. Div. 376; Harvey v. Railway, 124 Mass., 421.

Various reasons have been assigned for the limitations thus placed upon the right to recover such damages. For instance, it is sometimes said that defendant is entitled to the notice at the time of entering into the contract so that he may protect himself against such special or extraordinary liability by declining to make the contract, by inserting stipulations protecting himself against such liability, by charging additional compensation to cover the extra risk, or by making immediate extra preparation to guard against the breach; and again, it has been said that plaintiff "ought not to be allowed to obtain an advantage which he has not paid for." B. C. Saw-Mill Co. v. Nettleship L. R., 3 C. P., 499; Railway v. Ragsdale, 46 Miss., 459.

It is contended here on behalf of the carrier that such special damages should never be allowed against a railroad in this State because it is by law deprived of the privilege of declining to receive the shipment, of limiting its liability, or of charging extra compensation for the extra liability, and therefore it cannot be said to have contracted with reference thereto or to have received any compensation therefor. While the correctness of this contention is strongly intimated by high authority, Horne v. Railway, L. R., 8 C. P., 131, we do not think it based upon sound principle, because: (1) by the very nature of its business it invites the passage over its line, at the rates fixed by the Commission, of the usual commerce of the country, some of which it must know will be tendered to it with notice of such special conditions, and such invitation and tender constitute a contract with reference to such conditions; (2) it must be assumed that the rates fixed by the Commission include extra compensation for this class of risks as one of the ordinary and fixed charges of operation, and that therefore the shippers generally have paid for this measure of indemnity; and (3) the carrier has the opportunity to make immediate preparation to guard against the breach.

On the other hand, it is contended, on behalf of the shipper, that since the carrier under the law has no option but to receive and transport at the rates fixed by the Commission, and is not permitted to limit its liability by special contract, therefore the liability for special damage is no longer based upon contract, but solely upon a breach of duty to the shipper as a member of the public, and that the reason of the rule above stated, limiting plaintiff to such special damages as were contemplated by the parties at the date of the contract as the natural and probable result of its breach, has ceased, and that therefore defendant carrier must now be held liable for such special damages if it acquired notice after the contract of shipment was made and in time to have prevented a breach. We have seen above that the reason of the rule has not ceased, and therefore there is no ground for the contention of the shipper. It cannot be assumed by the courts that the parties, in making such a con-

tract, contemplated that defendant would be liable for such damages on subsequent notice, or that the Railroad Commission in fixing rates made any allowance for such a risk; for no such liability has ever been fixed upon the carrier by any adjudicated case so far as we have been able to ascertain. Harvey v. Railway, 124 Mass., 421, though it was once suggested. Gee v. Railway, 6 H. & N. (Ex.), 217.

Though this question has been twice argued before us with much ability, we have not been cited to nor have we been able to find any authority in support of either contention above stated. We do not, therefore, feel authorized to disturb the settled law regulating the right to special damages resulting from breach of contract, though the reasons usually given therefor may not be entirely logical.

Since it does not appear that the train-master had any authority to make, or control over the agent at Sherman in the matter of making, contracts of shipment for the company, or that it was his duty to communicate to such agent information with reference thereto, it follows from the principles above discussed and those stated in our former opinion in this case, 88 Texas, 549, that all questions above certified must be answered in the negative. Railway v. Faulkner, 88 Texas, 649.