SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. ALLEN.†

(Court of Civil Appeals of Texas. Texarkana. March 21, 1912. Rehearing Denied April 18, 1912.)

1. TELEGRAPHS AND TELEPHONES (§ 67*)—BREACH OF CONTRACT—SEVERANCE OF TELEPHONE CONNECTION.

The severance of connection by a telephone company, whereby a subscriber is deprived of the service he is entitled to, is a breach of contract by the company, making it liable to the subscriber, not merely for general damages, but for such special damages as were the natural and probable result of the special conditions of which the company had notice.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*]

2. TELEGRAPHS AND TELEPHONES (§ 67*)—BREACH OF CONTRACT—SPECIAL DAMAGES—NOTICE.

The duty of a telephone company under its contract with a subscriber being to place him in communication with other telephones on its line whenever called on to do so, notice of special conditions, necessary to make it liable for special damages for breach of the duty, need not have been given it when the contract was made, but it is enough that they were given prior to such breach.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*]

3. TELEGRAPHS AND TELEPHONES (§ 68*)—BREACH OF CONTRACT—DAMAGES — MENTAL ANGUISH.

Mental anguish sustained by plaintiff from witnessing the suffering of his wife, occasioned by failure to secure the attendance of a physician through severance by defendant telephone company of the connection of plaintiff, a sub-

scriber, may be recovered for as special damages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig. § 68.*]

4. TRIAL (§ 260*) — INSTRUCTIONS — REPETITION.

Special charges unnecessary by reason of the scope of the general charge need not be given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. CORPORATIONS (§ 407*)—BREACH OF CONTRACT—ACT BY DIRECTION OF MANAGER.

An act done under the direction of defendant's manager breaches its contract none the less because of the person doing it not being its employé.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1615–1619; Dec. Dig. § 407.*]

6. TELEGRAPHS AND TELEPHONES (§ 73*)—BREACH OF CONTRACT—DAMAGES.

It cannot be said as a matter of law that loss of a physician's services by a subscriber to a telephone company, living in the country and about nine miles from the physician, the nearest one to him, could not be considered as among the reasonable and probable consequences likely to result from the company's breach of its contract by disconnecting the subscriber's line, when knowing of the sickness of his wife, and the likelihood of it being necessary to call a physician.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 76; Dec. Dig. § 73.*]

7. APPEAL AND ERROR (§ 215*) — REVIEW — MATTERS NOT OBJECTED TO.

Judgment will not be disturbed because of the charge assuming a certain matter in plaintiff's favor; there having been evidence authorizing a finding thereon in his favor, and the charge not having been objected to because of such assumption.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309–1314; Dec. Dig. § 215.*]

Appeal from District Court, Cass County; P. A. Turner, Judge.

Action by T. Allen against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff. Defendant appeals. Affirmed.

W. S. Bramlett and A. P. Wozencraft, both of Dallas, and Hill Stewart, of Atlanta, for appellant. Hugh Carney and O'Neal & Figures, all of Atlanta, for appellee.

HODGES, J. This appeal is from a judgment rendered in the court below in favor of the appellee against the appellant for damages for breach of a contract.

Omitting formal parts, the petition is, in substance, as follows: It is alleged: That on March 10, 1908, the plaintiff, Allen, entered into a contract with the defendant by which it agreed to furnish him a telephone instrument in his residence at Springdale, Tex., "and telephone service to and at Queen City, for a consideration of fifty cents per month," the plaintiff and a number of other subscribers having agreed to erect a private line to the corporate limits of Queen City,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

to be known as line 42. That plaintiff had performed his part of said contract, the line had been erected, and plaintiff's telephone rents paid up to December 31, 1908. That on or about November 17, 1908, the defendant, without notice to plaintiff, and without lawful cause or excuse, and in violation of the contract then existing between them, disconnected the plaintiff's phone from the telephone exchange at Queen City. The petition further alleges that on the night of November 17, 1908, plaintiff's wife became violently ill and needed the services of a physician, that for a week or ten days prior to that time she had suffered from symptoms of miscarriage, and on this particular night she suffered an abortion. When his wife became ill, plaintiff attempted to call Dr. Strawn, a physician who resided at Queen City, a distance of seven miles from plaintiff's residence, and whom he desired to attend his wife upon that occasion, but was unable to get in communication with him. The cause of this failure to communicate with Dr. Strawn was due to the fact that defendant, through its servants and agents, had on the day before disconnected plaintiff's phone line from the exchange at Queen City; and this disconnection was made through the carelessness and negligence of the defendant's servants and agents. It is also alleged that there was no physician nearer than Queen City; that there was no other person at his home with whom plaintiff could leave his wife while going after a physician; and that her condition was too serious for her to be left alone. The pain and suffering of his wife, and his own mental anguish at having to witness her suffering, are set out at some length, and his damages placed at $2,000. Plaintiff further says that upon this occasion Dr. Strawn was at his home, and would have promptly responded to the call had it been received, and would have relieved the suffering which his wife was compelled to endure. With reference to notice to appellant concerning the condition of his wife at that time, the petition says: "Plaintiff further alleges that said defendant knew at the time of the breach of said contract of the illness and threatened miscarriage of plaintiff's wife, and that the plaintiff relied upon said defendant's telephone connection and service to obtain a physician, and that defendant further knew that said breach of contract would likely result in the mental pain and physical suffering of said plaintiff's wife." The appellant answered by general and special exceptions, a general denial, and a plea of contributory negligence. A trial before a jury resulted in the judgment in favor of the appellee for $1,000, from which this appeal is prosecuted.

Upon the measure of damages, the court gave the following instruction: "Should you find for plaintiff, you will be controlled by this charge in assessing his damages. You may consider any increased physical pain, if any, you may find that the wife of plaintiff suffered because of the failure to secure the services of Dr. Strawn, if you find he did fail to secure said Strawn. If you find that plaintiff's wife suffered physical pain, which you believe from the evidence that Dr. Strawn could and would have prevented had he been present, then this is the only physical pain for which plaintiff can recover, and you will consider no other physical pain in assessing plaintiff's damages. I further charge you that if you find from the evidence that the plaintiff, T. Allen, and his wife, Mattie Allen, or either of them, suffered any increased mental anguish because of a failure to secure the services of Dr. Strawn, which you find they would not have suffered had they secured the services of said Strawn, then you may consider such increased mental anguish. It is only increased mental anguish, if any, suffered by either plaintiff or his wife, which you find was caused by not having the services of Dr. Strawn, that you may consider in assessing the damages of plaintiff. If you find from the evidence that plaintiff's wife was left in a bad condition after her miscarriage, and that this condition has caused her to suffer pain, and that, if Dr. Strawn had been present with her at the time of her miscarriage, he could and would have prevented such condition, and (saved her) from suffering caused by such condition, then you may consider such pain in assessing the damages of plaintiff. You will allow plaintiff such sum as damages as you find from the evidence will reasonably and fairly compensate him for the injuries, if any, you may find he has suffered. You must confine yourselves to the items of damages submitted to you in this charge." Other portions of the charge made this recovery contingent upon a finding that appellant through its agents had notice of the condition of the appellee's wife, and that line 42 had been by them disconnected from the central office at Queen City.

From Allen's testimony we gather the following as the material facts: Line 42, with which Allen's residence was connected, was about nine miles long, extending that distance from Queen City into the country. It was erected in 1906 by the co-operation of eight citizens who desired telephonic connection, among whom was Allen. The understanding at the time between these citizens and the telephone company was that the former were to build the line to the corporate limits of Queen City to a connection with the appellant's line, and from that point the appellant was to extend the connection into its exchange in that city. Each party was to keep its own part of the line in repair. It was also understood that the appellant was to furnish each subscriber on that

line a telephone instrument, for which they were to pay the sum of 50 cents per month each as rent. On the 21st of October, 1908, Allen paid to Neville, appellant's manager, the sum of $1.50 in full of all rentals due from him up to the 1st day of January, following. At the time of making this payment Allen says he told Neville about his wife's condition, informed him that she was pregnant, and had lately exhibited frequent symptoms of miscarriage, and that he had talked with Dr. Strawn, his physician, who lived at Queen City, about her condition. He also told Neville at the same time that he wanted the line to be kept in good order, and prompt attention given to his calls, so that he might be able to summon Dr. Strawn in the event his wife grew worse. He says Neville promised to give him good service thereafter. After this conversation Allen had two physicians—Drs. Strawn and Gowan—with Mrs. Allen, who, it seems, continued to suffer with the same character of illness. Two other conversations about the telephone service and the condition of Mrs. Allen took place between Allen and Neville after this, one on the 4th, and the other on the 14th, of November. In each of these Allen says he impressed upon Neville the condition of his wife and his desire for good telephone service. On the 17th of November Mrs. Allen was confined to her bed most of the day. Between 6 and 7 o'clock that evening her condition was such that Allen deemed it prudent to call in his physician. He then attempted to communicate with Dr. Strawn over his telephone, but could get no response from the central office. He made one or two other unsuccessful efforts during the night, and then ministered to his wife as best he could under the circumstances. Some time between 2 and 3 o'clock in the morning an abortion occurred, accompanied by much pain and considerable flooding. Allen's family consisted of himself, wife, and a small child. He had two neighbors, who resided within less than 150 feet of him. Some negro families lived about a half mile distant. A woman from that settlement had previously waited on Mrs. Allen at times during her illness. The next nearest white neighbor lived about one mile away, but was absent from home on that occasion. One of the neighbors who lived next door to Allen had a sick wife, and for that reason declined to go for the doctor. Allen admitted that he could ring all the parties on line 42 after the disconnection was made, but said he made no effort to get any of them except one man, who was at that time absent from home. He says he had no way of going to Queen City except to walk. No physician was summoned for Mrs. Allen till about the 22d of November. The reason given is that they thought she could get along without one. Her condition after that time became serious, and she was placed under the treatment of physicians.

[1] The damages authorized by the charge and awarded by the jury were special, and such only as would be justified in a case in which notice had been previously given of the special conditions from which such injuries might be expected to result as the natural and probable consequences of a breach of the existing contract with Allen. At the time line 42 was disconnected, Allen occupied the status of a subscriber in good standing with the appellant, and was entitled to the service due to such patrons—that of being placed in communication with any other subscriber for whom he might call. The severance of the connection was accomplished by merely pulling out a plug in the central telephone office at Queen City. The doing of this under the circumstances of this case must be regarded as simply a refusal by the appellant to receive further calls from Allen or any one else on line 42. The jury found that this was a breach of the contract then subsisting between Allen and the appellant, and we think this conclusion is sufficiently supported by the evidence. For this breach the appellant may be held liable for such general damages which might reasonably be expected to follow as the natural and probable consequences of the act, and for such special damages as were the natural and probable result of the special conditions of which appellant had notice.

[2] While a telephone line is a means employed for the transmission of messages between private parties, yet the engagement of a telephone company is only to bring the parties desiring to talk into positions where they may communicate with each other. To its local subscribers the telephone company owes the duty of placing them in communication with other phones on its lines when called upon to do so. In this respect the contract between such companies and their subscribers remains in many respects executory till their relations are terminated. It would seem, therefore, that the general rule requiring that notice of special conditions essential to form the basis of special damages for breach of a contract should be given at the time the contract was entered into could not in this class of cases be equitably applied. In the case of M., K. & T. Ry. Co. v. Belcher, 89 Tex. 428, 35 S. W. 6, the Supreme Court says: "The rule seems to be settled that plaintiff, in order to recover special damages for breach of a contract, must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based upon or made with reference to such conditions." In that case the right to recover special damages was denied because the requisite notice had not

been given to the shipping agent of the railway company at the time contract of shipment was made. In the case of Bourland v. Railway Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647, the case above referred to was reviewed, and the rule therein announced in some respects qualified. In the Bourland Case the facts showed that the plaintiff was engaged in the business of fattening cattle near Washita, Okl.; that on the 18th day of April, 1902, he delivered to the railway company at Little Rock, Ark., two car loads of cotton seed cake for transportation to Washita. No notice was given to the railway company at the time of the purposes for which the cake was needed, and of the damage to result from the delay in delivering it at Washita. When the cars reached Washita, an agent of the plaintiff applied to the station agent at that place for the cake, and notified him that they were entirely out of feed, had about 600 cattle on hand, and that delay meant a great loss to them. There was considerable delay in making this delivery, due to the fact that the agent of the railway company absconded, and by some mistake the cars were sent out on another road. The question was, Did the giving of this notice at the time make the railway company liable for injury to the cattle resulting from the lack of feed? This was answered in the affirmative. Among other things the court said: "The simple fact is that it [the railway company] held so much of plaintiff's property of which he desired and was entitled to immediate possession for a special purpose and for lack of which defendant was then fully informed plaintiff was in danger of suffering the loss for which compensation is now sought, which loss could have been prevented by the mere delivery of the property. In such a case knowledge of these facts when the contract for transportation was made appears to be unessential." The principle applied in the case last cited shows the absence in this state of any fixed rule requiring that notice, in order to form the basis of a claim for special damages resulting from the breach of a contract, should be given at the time the contract is made. It would seem to be sufficient if the notice is given at the time the service contracted for is due, and while the situation is such that the agent, or party to whom the notice is given, may, in the performance of his duty, avert the special consequences constituting the grievance. The special damages allowed in such cases are limited to the natural and necessary consequences that may reasonably be expected by the parties under the circumstances disclosed in the notice to result from the particular breach complained of. Daniel v. W. U. Tel. Co., 61 Tex. 452, 48 Am. Rep. 305; W. U. Tel. Co. v. Kibble, 53 Tex. Civ. App. 222, 115 S. W. 643, and cases cited.

[3] Appellant has presented 17 assignments of error. Ten of them complain of the refusal of the court to give special charges requested. The third special charge reads as follows: "You are instructed in this case that on the claim for damages made by the plaintiff for mental anguish alleged to have been suffered and sustained by him you will return a verdict for the defendant." The proposition is that Allen was not entitled to recover under the facts of this case for any mental anguish which he sustained by reason of witnessing the suffering of his wife occasioned by the failure to secure the attendance of his physician. The contrary rule has been adopted by the Supreme Court of this state. G., C. & S. F. Tel. Co. v. Richardson, 79 Tex. 649, 15 S. W. 689; W. U. Tel. Co. v. Stephens, 2 Tex. Civ. App. 129, 21 S. W. 148; W. U. Tel. Co. v. Linn, 23 S. W. 897; W. U. Tel. Co. v. Kendzora, 26 S. W. 245; W. U. Tel. Co. v. Cavin, 30 Tex. Civ. App. 152, 70 S. W. 230; G., C. & S. F. Ry. Co. v. Coopwood, 96 S. W. 105; W. U. Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 859, 6 L. R. A. 844, 16 Am. St. Rep. 920.

[4] No injury could have resulted from the refusal to give special charge No. 4, because the subject-matter to which it related was not submitted by the court in his general charge as one of the issues upon which the jury might find in favor of the appellee.

The general charge of the court precluded any recovery by reason of the facts sought to be safeguarded by appellant's special charge No. 5.

The issues involved in special charge No. 7 were not included in those submitted to the jury.

Special charge No. 8 was rendered unnecessary because the court required the jury to find that line 42 had been actually disconnected as a condition upon which they might return a verdict in favor of the plaintiff.

[5] Special charge No. 9 sought to relieve the appellant from the conduct of one Grover Powell, who testified that he disconnected line 42 under the direction of Neville, the manager of appellant's line. It is immaterial whether Grover Powell was at the time a regular employé of the appellant or not, if he disconnected the line in obedience to instructions given him by the manager.

All that is material in special charge No. 12 is substantially embraced in the main charge of the court. There was no error in the portions of the main charge complained of in the eleventh and twelfth assignments. Neither was there any in permitting the appellee to testify concerning the notice which he gave to appellant's manager regarding the condition of his wife.

We have carefully considered all of the assignments of error, and think they should be overruled.

[6, 7] Upon the original hearing, we concluded that the judgment rendered in this case was fundamentally erroneous, and for that reason it was reversed. We were of

the opinion that the distance between Allen's residence and that of his physician was so short that a messenger might have been dispatched by Allen when the services of the physician were found necessary, and that, under the circumstances, it might be assumed as a matter of law that the loss of the physician's services could not be considered as among the reasonable and probable consequences likely to result from disconnecting the telephone line. While the facts present one of those ridge pole cases sometimes met with in legal controversies, we do not feel warranted in resolving the doubt against the verdict and judgment of the trial court. If the physician wanted upon this occasion had been a hundred or more miles distant, it might safely be assumed that a failure to furnish the facilities for giving such notice to the physician over the wire would result in depriving the patient of his services entirely. On the other hand, let us suppose that the physician resided within the distance covered by an ordinary city block, and could have been reached in a few moments by a messenger. It might with equal satisfaction be assumed that no such consequences would have resulted. It follows, then, that there is somewhere between those two extremes a situation in which the probable consequences likely to result from the loss of the telephone cease to be a question of law and become one of fact which should be submitted to the judgment of the jury. In this case the court assumed as a matter of law that the disconnection of the telephone deprived Allen of any reasonable means of summoning his physician, and that such was in contemplation of the parties one of the probable results of a breach of the contract. The charge might be objectionable as on the weight of the evidence, but no complaint of that character is made of it. The issue is one which the jury might have determined in favor of the appellee, and we are not prepared to say that the verdict is so clearly wrong that it should be set aside in the absence of a specific objection. Unless we could say that as a matter of law no such consequences could have been reasonably expected to follow the loss of the telephone service, the judgment should not be disturbed.

We have therefore concluded to grant the motion for a rehearing, set aside the judgment formerly rendered in this case, and affirm that of the court below.