### San Antonio & Aransas Pass Railway Company et al. v. Houston Packing Company.

#### No. 2349. Decided May 28, 1914.

**1.—Supreme Court—Certified Question.**

The Supreme Court will not answer abstract questions of law on certified questions; and it is confined, in its answer, to a consideration of such facts as are shown by the certificate. (P. 388.)

**2.—Same.**

The facts shown by the certificate here considered are held insufficient to enable the Supreme Court to answer the questions asked as applied to the issues presented. (P. 388.)

**3.—Carrier—Delay—General and Special Damages.**

Where a packing company delivered its own oil tank car to a railway consigned to a cotton seed oil mill and to be returned loaded therefrom, which car was diverted by connecting carriers and used elsewhere, causing delay in its return loaded to the shipper, the measure of damages would be the value of the ordinary and usual use of the car during the period of delay, where the carrier was not informed with what it was to be loaded. But if delayed after the car was loaded and returned to the initial carrier and it notified of a special purpose in the shipment, it would be liable for damages resulting from the failure to deliver for such special use. (P. 388.)

Questions certified from the Court of Civil Appeals, Eighth District, in an appeal from Harris County.

*Baker, Botts, Parker & Garwood, E. B. Perkins,* and *R. J. Boyle,* for appellants.—Evidence as to what the car was to be loaded with would be irrelevant and inadmissible, unless appellants knew at the time they made the contract for shipment, or when they accepted the car, that it was being transported for the purpose of being loaded with oil and returned. Pacific Express Company v. Darnell, 62 Texas, 640; M., K. & T. Ry. Co. v. Belcher, 89 Texas, 428; C., R. I. & P. Ry. Co. v. Ele-

vator & Light Co., 87 S. W., 754; Haberzettle v. T. & B. V. Ry. Co., 46 Texas Civ. App., 527; Pacific Express Co. v. Jones, 52 Texas Civ. App., 367; Wells-Fargo & Co. Express v. Thompson, 53 Texas Civ. App., 515; Express Co. v. Battle, 5 Texas Civ. App., 532; Hutcheson, Carriers, sec. 1369.

The appellants having had no notice at the time of the delivery of the car, or prior to the signing.of the bill of lading, that tank cars had no fixed rental value during the year, but that their rental value was determined by how badly the appellee would need the car, in the event it was delayed beyond reasonable time, such evidence was immaterial to any issue in the case. Same authorities.

The reasonable rental value of the tank cars should have been based upon prices for which tank cars rented at Houston during the time inquired about, and not upon what a person was willing to pay for one during his busy season. Railway Co. v. Terry, 22 Texas Civ. App., 176; Railway Co. v. Jones, 16 Texas Civ. App., 179; Railway Co. v. Muldoon, 54 Texas, 234; Sloane v. Baird, 162 N. Y., 330; Sanford v. Peck, 63 Conn., 493; Railway Co. v. Moore, 124 Ill., 329.

*Hutcheson & Hutcheson*, for appellee.—Damages are measured by the value of the use of the car for the purposes to which it was adapted, without reference to the question of whether the defendants had or had not notice at the time of the execution of the contract of the use to which said car was adapted, because such damages are general and consequential, and are not special, and the evidence was admissible upon the issue of the nature of the use to which the car was adapted, and the value of that use. Moore, McK. & Co. v. King, 40 Texas Civ. App., 397; T. & P. R. R. Co. v. Hassell, 23 Texas Civ. App., 681; G., C. & S. F. Ry. Co. v. Compton, 38 S. W., 220; Waller v. Hail, 46 S. W., 82; Priggen v. Strickland, 8 Texas, 427; Endel v. Norris, 39 S. W., 608, 15 Texas Civ. App., 140; Keyser v. Jurvelius, 122 Fed., 218; Yazoo Valley, Miss., R. R. Co. v. Christmas, 42 So., 169; Louisville Packet Co. v. Bottorff, 77 S. W., 920; Simpson v. London and N. W., 1 Q. B. D., 274.

The value of the use of the article during the time of its detention is applicable not only to cases of overt trespass, but is likewise applicable to cases of delay on the part of a carrier in the transportation of goods which fall short of conversion. G., C. & S. F. Ry. Co. v. Compton, 38 S. W., 220; T. & P. R. R. Co. v. Hassell, 23 Texas Civ. App., 681, 58 S. W., 54; Keyser v. Jurvelius, 122 Fed., 218; Yazoo & Miss. Valley R. R. Co. v. Christmas, 42 So., 169; Louisville Packet Co. v. Bottorff, 72 S. W., 920; Toledo W. W. R. R. Co. v. Lockhart, 71 Ill., 627.

The railroad company should have been apprised, under the rule of Hadley v. Baxendale, that if they diverted and detained this car plaintiff would be deprived of the value of its use for the purpose to which it was adapted, by the very nature of the car, of the business which the plaintiff was engaged in, of the business in which the railroad companies were themselves engaged, and of the fact that it was consigned to a

cottonseed oil mill, to be loaded and returned, that if they did not return it, plaintiff would be deprived of the reasonable value of its use for the purpose of transporting products used in the business in that season to which it was adapted.   Hutchinson on Carriers, 922; St. Louis S. W. Ry. Co. of Texas v. Cates, 15 Texas Civ. App., 135; Carrico v. Stephenson, 135 S. W., 260; Keyser & Co. v. Jurvelius, 122 Fed., 222; Webb v. Atlantic Coast Line, 9 L. R. A. (N. S.), 1218; Yazoo & Miss. Valley Ry. Co. v. Christmas, 42 So., 169; Louisville Packet Co. v. Bottorff, 77 S. W., 920; Storey Lumber Co. v. So. Ry. Co., 65 S. E., 460; Midland Valley Ry. Co. v. Hoffman, 120 S. W., 380; Toledo & W. Ry. Co. v. Lockhart, 71 Ill., 677; Clute y. Chicago, R. I. & P. Ry. Co., 30 L. R. A., 1071; Ebb v. Atlantic Coast Line Ry. Co., 9 L. R. A. (N. S.), 218.

Mr. Chief Justice BROWN delivered the opinion of the court.

The Court of Civil Appeals of the Eighth District certified to this court the following statement and questions:

"Action by appellee against San Antonio & Aransas Pass Railway Company and St. Louis Southwestern Railway Company of Texas, for recovery of damages alleged to have been sustained by reason of delay in transportation of an oil car delivered in Houston to the first named railway company, to be by it and its co-defendant transported to Frost, Texas, and there delivered to the Planters Oil Company, loaded with crude cottonseed oil, and then returned to appellee in Houston.

"The cause was tried before a jury and was submitted upon special issues.   The issues and answers thereto are as follows:

"First.   Did plaintiff's tank car, or tank cars of a similar nature, have a reasonably established rental value during the period from December 24, 1908, to March 2, 1909?

"Answer:   No.

"Second.   If you find from the preponderance of the evidence that the car had no rental value, and have answered question No. 1 in the negative, then, in that event, you will answer the following question:

"What was the reasonable value of the use of the car during the period when same was detained, to persons generally in the business of hauling and transporting *cottonseed oil?*

"Answer: $514.73.

"The testimony shows:   That empty oil tank car No. 109 was delivered to the San Antonio & Aransas Pass Railway Company December 21, 1908, under bill of lading which provided that the tank should be carried to Frost, Texas, and there loaded by the Planters Oil Company and returned; that the routing was over the San Antonio & Aransas Pass Railway to Waco, over St. Louis Southwestern Railway Company of Texas to Frost, to be returned to Waco by that company and from thence to Houston by the San Antonio & Aransas Pass Railway Company.

"The billing did not show what it was to be loaded with.

"That car No. 109 was purchased and owned by the Houston Packing Company to be used in transporting cottonseed oil.

"That the car was not returned to plaintiff until the 24th day of February, 1909.

"That a reasonable time to take the car to Frost and return would be ten days.

"That the car was diverted at Waco by the St. Louis Southwestern Company.

"(In this connection it was agreed that as between these carriers the liability, if any, was against the St. Louis Southwestern Railway Company.)

"That the Houston Packing Company used fuel oil to run its plant and sometimes had its cars come in loaded therewith. That it owned nine oil tank cars and during the period of the detention of car 109 they used their cars and other cars exclusively for transporting cottonseed oil.

"The testimony does not disclose how many oil tank cars were handled by defendants for the Houston Packing Company prior to the time of the diversion of car 109.

"That the Planters Oil Mill Company, the consignee, handled cottonseed products, crude cottonseed oil. Crude oil is just as it comes from the seed. The Planters Oil Mill Company does not deal in fuel or mineral oils.

"That the crude oil is purchased of the mills in the interior and the refining is done at such concerns as the Industrial Cotton Oil Company, and Merchants and Planters.

"That the general purpose of the cars is for transporting the crude oil from the oil mills that don't operate refineries to the refineries and refining the crude oil into the finished product.

"That plaintiff put on the line of tank cars for the express purpose of handling cottonseed oil. It was unable to get cars with any degree of certainty from the railroad company when needed.

"That during the time this car was detained plaintiff bought cottonseed oil from mills in Cuero, Yoakum, Giddings,—all over South Texas.

"That Cuero is on the San Antonio & Aransas Pass Railway.

"That car 109, on December 11th, went to Waxahachie for oil; on December 18th it arrived from Waxahachie, and on December 21, 1908, left for Frost, Texas.

"That customarily the railroads on receiving billing for one of these cars come to plaintiff's yards and get the car.

"That prior to December 18th plaintiff purchased cottonseed oil on the line of the San Antonio & Aransas Pass Railway, at Beeville, San Antonio, and Cuero.

"That it was during the first days of January, 1909, that the defendants learned that car 109 had been diverted. That defendants then knew that plaintiff was demanding the return of the car at once.

"That an agent of the St. Louis Southwestern came and talked to

plaintiff about the detention of the car about this time.    That a demand was also made of the San Antonio & Aransas Pass Railway Company.

"*That at one season plaintiff required the use of the car more than at another season, towit, during the busy season which opens with the cotton season in August and September and closes in March.    That the period that this car was out of service was plaintiff's busy season.*

"That there was no fixed rental value of the tank cars throughout the year; that if plaintiff had had the car during the time it was delayed it would have used same for hauling cottonseed oil; there was a steady demand for tank cars during that season; the market on oil had something to do with the value of tank cars and their value is to a great extent determined by the buyer because of their availability to move oil during the time the seller wants it moved.

"*That at least ten dollars per day was the reasonable value of the use of the tank for the purpose of hauling and transporting cottonseed oil for sale or otherwise, from December 21st to March 2nd.*

"That plaintiff was unable to get other tank cars to haul oil while out of the use of the one in question.

"That some days after appellants had received the car, notice was given them of the importance of prompt return of the car and of the particular use for which it was intended and that it had been sent to Frost to be loaded with cottonseed oil.

"The testimony above which is italicized was all objected to upon the ground that it tended to show a special use, special damage and special matters of which defendants had no notice at the time of the execution of the bill of lading and delivery of the car and was therefore irrelevant, immaterial and pertained to no issue.

### "First Question.

"Should the measure of plaintiff's damage under the above statement of what the testimony shows, be determined by the rules of law on that subject, applicable to breaches of contract; or would the fact that defendants were common carriers and as such owed a public duty to carry with reasonable dispatch, irrespective of the contract, make applicable the measure of damages for delay, as in cases of tort?    For statement of distinction of rules, see Sutherland on Damages, 3rd ed., par. 45.

### "Second Question.

"From the testimony above stated, would knowledge be imputed to the defendants so as to render them liable for the value of its use for that purpose, rather than its general use for oil transportation?

### "Third Question.

"Was the italicized portion of the testimony admissible as against the objections urged to it?

## "*Fourth Question.*

"Does this case come within the rule announced by the Supreme Court in Bourland v. Railway Co., 99 Texas, 407, so as to render defendants liable for the value of the special use of the car from the time notice was given them of the importance of prompt return of the car and of the particular use for which it was intended, and that it had been sent to Frost to be loaded with cottonseed oil?"

Counsel for appellee in their argument discuss facts not disclosed and issues of law not presented in the certificate to which we will confine our answers.

The rules for certifying questions to this court have not been complied with and the certificate should not have been filed. However, we will make the best answer that we may be able upon the facts stated.

We understand that the Houston Oil Company delivered the car to the San Antonio & Aransas Pass Railway Company at Houston on December 21, 1908, to be delivered by that railroad company to the St. Louis Southwestern Railway Company at Waco, Texas, and to be by the latter company carried to Frost, and delivered to the Planters Oil Company to be loaded with crude cottonseed oil and by said railroad returned to Houston to the owner. The billing did not "show what the car was to be loaded with." The car was not returned to its owner until February 24, 1909, being eighty-six days. Ten days would have been reasonable time for its return. The statement does not show at what time the St. Louis Southwestern Railway Company delivered the car to the Planters Oil Company, nor at what date it was returned by that oil company to the St. Louis Southwestern Railway Company for transportation to Houston.

We are not able to intelligently answer the several questions separately, therefore we will answer generally as we understand the facts.

Assuming that the delay occurred in delivering the car to the Planters Oil Company and that the railroad company was not informed that it was to be loaded *with oil*, the value of the ordinary and usual use of such car would be the measure of damages for the failure to deliver it to that company within a reasonable time. If the delay occurred after the car was loaded and returned to the railroad company and after it had been notified of the purpose to transport the oil to Houston for use there, the St. Louis Southwestern Railway Company would be liable for such damages as would ordinarily result from the failure to deliver to the Houston Oil Company for the use to which the oil was to be applied. The facts certified show no special damages. The following cases state the law applicable to the facts: Missouri, K. & T. Ry. Co. v. Belcher, 89 Texas, 428, 35 S. W., 6; Bourland v. Chicago, O. & G. Ry. Co., 99 Texas, 407, 90 S. W., 483, 3 L. R. A. (N. S.), 1111, 122 Am. St., 647.

We do not answer abstract questions of law and have, therefore, not directed our reply to any specific question.