SAN ANTONIO & A. P. RY. CO. et al. v. HOUSTON PACKING CO. (No. 28.)

(Court of ·Civil Appeals of Texas. El Paso. July 2, 1914. Rehearing Denied Oct. 5, 1914.)

CARRIERS (§ 135*)—DELAY AND MISDELIVERY —ELEMENTS OF DAMAGES—LOSS OF PROFITS.
· Where, in an action against certain carriers for delay and misdelivery of a private tank car; it was not shown that the carrier was informed that the car was to be loaded with oil at the place to which it was consigned, when it was delivered for ' transportation, plaintiff could not recover for profits alleged to have been lost because of failure to receive the oil with which the car was intended to be loaded.
[Ed. Note.—For other cases, see Carriers, Cent Dig. §§ 557-559, 599-602, 603½-604½; Dec. Dig. § 135.*]

Appeal from Harris County Court; A. E. Amerman, Judge.

Action by the Houston Packing Company against the San Antonio & Aransas Pass Railway Company and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded after the return of answers to questions certified to the Supreme Court (167 S. W. 228).

Baker, Botts, Parker & Garwood, of Houston, E. B. Perkins, of Dallas, and R. J. Boyle, of San Antonio, for appellants. Hutcheson, Campbell & Hutcheson, of Houston, for appellee.

HIGGINS, J. This was an action by the Houston Packing Company against the San Antonio & Aransas Pass Railway Company and St. Louis & Southwestern Railway ·Company of Texas, to recover damages alleged to have been sustained by reason of delay in transportation of an empty oil car delivered by the packing company in Houston, Tex., to · the first-named railroad company, to be by it and its codefendant transported to Frost, Tex., and there delivered to the Planters' Oil Company and loaded with crude cotton seed oil, and then returned to the packing company at Houston. In the petition it was alleged that on or about the 21st day of December, 1908, appellee delivered to the San Antonio & Aransas Pass Railway Company oil tank car No. 109, the property of appellee, to be delivered by the said railway company to the Planters' Oil Company at Frost, Tex., and returned to the appellee loaded with oil; that the routing of said car was over the San Antonio & Aransas Pass Railway Company to Waco, Tex., for delivery to the St. Louis Southwestern Railway Company of Texas, to be by it delivered to the Planters' Oil Company at Frost, for the purpose aforesaid; that said oil car was transported from Houston to Waco by the San Antonio & Aransas Pass Railway Company, and was by it delivered to the St. Louis Southwestern Railway Company of Texas, for the purpose of being transported to Frost; that said car was not delivered to the Planters' Oil Company at Frost, but was, through the negligence of the San Antonio & Aransas Pass Railway Company and St. Louis Southwestern Railway Company of Texas, diverted and sent out of the state of Texas, where it remained for a period of 71 days; that, by reason of the said diversion, appellee was compelled to pay $2 demurrage for a period of 12 days, $24, and was further damaged in the sum of $720 by reason of said delay, as hereafter shown; that the diversion of said car and the retention of same 71 days was over the protest of appellee, and that said appellants refused to return said car, though often demanded; that said appellants knew, at the time of the delivery of the car to them for transportation to Frost, of the necessity and use to which said car was being placed, and that appellee was being damaged by·reason of the diversion thereof; that, by reason of the diversion of said car, appellee was unable to procure another car to be used by it in its business, and was unable to procure the use of another car to take the place of the one diverted;·

that the car delivered by appellee to appellants, at the time of delivery, had no actual rental value, but that said car possessed a special value to appellee, in that appellee was using the car in its business of transporting oil to its plant in Houston, and there converting the same into soap stock and lard compound; that, if appellee had had said car at said time, it would have handled and brought to its plant during said 71 days 331,080 gallons of oil, which said 331,080 gallons of oil would have been converted, through its plant, which is an established business, and which has been maintained for many years, into soap stock and 340,000 pounds of lard compound; that said soap stock and lard compound would have been made and sold by plaintiff, as similar lard and soap stock made from other oil brought by it to its plant was made and sold, at a reasonable profit, to wit, on its soap stock, one-fourth cent per pound, on its lard compound, 15 cents per hundred pounds; that said profit was reasonable and usual, and was fixed and established by the long-continued custom of its business; that by reason of being deprived of its car, which was diverted by the appellants, appellee was deprived of said amount of oil, which said car would have handled, and was deprived of the soap stock and lard compound into which said oil would have been converted, and was deprived of the profits as hereinabove pleaded, which said appellee would have made, to wit, the sum of $710; that appellants, at the time it received the car and diverted same, knew of the scarcity of oil tank cars, and well knew of the nature and kind of damage which appellee would be subjected to in the case of failure of appellants to transport said oil.

Appellee further charges in its petition that during the period of 71 days, the time which appellee was deprived of the car, oil tank cars had no fixed and established rental value; that the reasonable value of the use of appellee's car and of cars similar thereto was $10 per day, and that if appellants did not know the nature of appellee's use of said car, and was not charged with liability to appellee, then appellants are liable to appellee for the reasonable value of the use of said car during the time appellee was deprived of same; that if oil tank car No. 109, or tank cars of similar nature, had a fixed and established rental value for the time in which appellee was deprived of same, said rental value was $10 per day; that, in trying to locate said car and have the same returned, appellee expended the further sum of $10.42 for telegrams, for all of which appellee sought damages against appellants.

Appellants answered by general demurrer and general denial, and specially excepted to all of paragraph 6 of appellee's amended petition, wherein appellee sought to recover damages for profits, for the reason that said petition did not state the manner in which said alleged profits could have been made by appellee, in that it failed to state from whom

appellee would have purchased the oil, and the price paid, and to whom appellee would have sold the oil or products, and the cost of manufacturing same, which special exception was overruled.

The case was tried before a jury and submitted upon special issues. The issues and answers hereto are as follows:

First. Did plaintiff's tank car, or tank cars of a similar nature, have a reasonably established rental value during the period from December 24, 1908, to March 2, 1909? Answer: No.

Second. If you find from the preponderance of the evidence that the car had no rental value, and have answered question No. 1 in the negative, then, in that event, you will answer the following question: What was the reasonable value of the use of the car, during the period when same was detained, to persons generally in the business of hauling and transporting cotton seed oil? Answer: $514.73.

On trial, appellee's manager, T. J. Gibbons, testified:

"Car was to be loaded with crude oil at Frost and returned; was used by plaintiff solely for handling cotton seed oil. That they put on a line of tank cars for purpose of handling cotton seed oil because it was never able to get cars with any degree of certainty from the railroads. There is a difference in the work required of tank cars in question through the seasons, and that at one season plaintiff required the use of the car more than another season, to wit, during the busy season, which opens with the cotton season in August and September and closes in March, and during the summer season plaintiff practically had no use for the tank cars. That the period during which the car in question was out of service was plaintiff's busy season. There was no fixed rental value for tank cars throughout the year. A car was worth what it would bring, and the price would be determined by the demand and how bad the person wanting the car would need it. If plaintiff had had the tank car during the time it was delayed, it could have used some for hauling cotton seed oil. There was a steady demand for tank cars during that season. The purpose of the people in the South in getting the oil is to manufacture the lard compound, and the purpose in the North is to manufacture oleomargarine; also as to what kind of institutions are engaged in the business of purchasing oil and what kind are engaged in converting the oil into the finished products. During the time of the detention of the car, plaintiff purchased oil from perhaps 40 per cent. of the mills in Texas, including the mills in Cuero, Yoakum, Giddings, and all over South Texas. The market on oil has something to do with the value of tank cars, and their value to a great extent, is determined by the buyer, because of their availability to move oil at the time the seller wants it moved. The price of oil varied during the time the car was out and that 33 cents per gallon was the average price for oil and that the market advanced still more in March. In my opinon at least $10 per day was the reasonable value of the use of the tank car for the purpose of hauling and transporting cotton seed oil for sale, or otherwise, from December 21st to March 2d."

F. C. Snavelly, appellee's traffic manager, testified:

"The months of December, January, February, and March was the busiest season of the year for plaintiff in handling cotton seed oil and manufacturing products therefrom, and the value of the use of a tank car to its owner at this season depends on the value of cotton seed oil. Plaintiff was unable to get other tank cars to haul oil while out of the use of the one in question."

For a further statement of the facts, reference is made to the certificate in the case made upon certified questions to the Supreme Court. Appellants objected to all of the above-quoted testimony of Gibbons and Snavelly, upon the ground that same tended to show matters of which the defendants had no notice at the time of the signing of the bill of lading or of the delivery of the car, and because the matters proven showed a special use by plaintiff of the tank car in question, and showed special damage suffered by reason of the delay in transportation and return of car, of which matters defendants had no notice at the time of the signing of the bill of lading or the delivery of the car.

· In answering the certified questions, the Supreme Court said:

"Assuming that the delay occurred in delivering the car to the Planters' Oil Company, and that the railroad company was not informed that it was to be loaded with oil, the value of the ordinary and usual use of such car would be the measure of damages for the failure to deliver it to that company within a reasonable time. If the delay occurred after the car was loaded and returned to the railroad company, and after it had been notified of the purpose to transport the oil to Houston for use there, the St. Louis & Southwestern Railway Company would be liable for such damages as would ordinarily result from the failure to deliver to the Houston Oil Company for the use to which the oil was to be applied. The facts certified show no special damages. The following cases state the law applicable to the facts; Railway Co. v. Belcher, 89 Tex. 428 [35 S. W. 6]; Bourland v. C., O. & G. Ry. Co., 99 Tex. 407 [90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647]."

The facts in this case disclose that the delay occurred in delivering the car to the Planters' Oil Company; in fact, it was never delivered to the Planters' Oil Company, but was diverted at Waco, and its return some 70 days later was to the packing company at Houston. It does not appear the railway company was informed that the car was to be loaded with oil at the time it was delivered to it for transportation. The answer of the Supreme Court sheds but little, if any, light upon the second and third questions propounded. As we understand the entire answer, however, it would seem that much of the testimony of Gibbons and Snavelly was subject to the objection urged against it and should have been excluded.

The error complained of in the fourteenth assignment should not occur upon retrial.

The seventeenth assignment complains of the overruling of a special exception to that portion of the petition relative to profits. Since the evidence offered by the appellee in support of these allegations was excluded, the error in overruling the exception was harmless and would not require a reversal, but, since a reversal is necessary for the error indicated, it is proper to say that the allegations with reference to profits should ·be stricken out. Appellee's cross-assignment complaining of the exclusion of evidence of loss of profits is overruled.

Reversed and remanded.