WESTERN UNION TELEGRAPH CO. v.
HICE et al.　(No. 871—4619.)

(Commission of Appeals of Texas, Section A.
Nov. 24, 1926.)

1. Telegraphs and telephones ⬸68(4)—Notice of relationship between deceased and addressee in death telegram held sufficient for recovery of damages for mental anguish.

Statement of niece of sender of death telegram to company's agent that, if addressee did not receive it, it would almost kill her, held sufficient as regards right to damages for mental anguish for failure to timely deliver telegram to inform company that affectionate relations existed between addressee and deceased.

2. Telegraphs and telephones ⬸59—Liability for failure properly to transmit telegram may arise ex delicto.

Liability of telegraph company for failure properly to transmit telegram may arise ex delicto generally.

3. Telegraphs and telephones ⬸68(5)—Notice that mental anguish would arise from failure to deliver death telegram held not insufficient because not given when telegram was offered and accepted.

Statement of niece of sender of death telegram, to company's agent, that if telegram was not delivered it would almost kill addressee, held not insufficient, as regards right of damages for mental anguish for failure timely to deliver telegram, because not given at time when telegram was offered by sender and accepted by company.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Mrs. Daisy Hice and husband against the Western Union Telegraph Company. Judgment for plaintiffs was modified and affirmed by the Court of Civil Appeals (282 S. W. 923), and defendant brings error. Affirmed.

Elmer L. Lincoln, of Texarkana, Wm. H. Flippen, of Dallas, and Francis R. Stark, of New York City, for plaintiff in error.

W. L. Willie and J. M. Braswell, both of Paris, for defendants in error.

NICKELS, J. At 10:14 a. m., June 19, 1925, Lewis Ford filed with Western Union Telegraph Company, at its office in Sherman, Tex., a telegram addressed to Daisy Hice, "395 Houston street, Paris, Texas," and reading as follows: "Mr. Ford is dead Answer at once if coming come to Sherman," and signed, "Lewis Ford." The message was transmitted so as that it was received in the Paris office at 10:22 a. m. same day. It was there transcribed and a copy delivered to the company's messenger for delivery. The messenger left the office and returned within about 30 minutes and reported inability to deliver because there was no such number as "395 Houston street." Thereupon a service message requesting correct address was sent to the Sherman office and the request was communicated to Lewis Ford. Thereupon Lewis Ford and his niece, who is a daughter of Daisy Hice, went to the Sherman office and stated their inability to give a more definite address, but reasserted their belief that the address given was correct. They stated that they did not know whether the street number given was on a part of the street known as West Houston or as East

Houston, etc. In the course of the conversation with the company's agent at Sherman, Daisy Hice's daughter stated that "if Mamma does not get the message it would almost kill her." The agent at Sherman reported to the Paris agent inability to give more definite address, and suggested inquiry at the post office and mailing of a copy to Mrs. Hice. That report was received at Paris at 1:30 p. m., June 19, 1925. A copy of the telegram was mailed from the Paris office and was received by Mrs. Hice on June 20, 1925. The information conveyed to Mrs. Hice in this way reached her so late as that she was thereby prevented from attending the funeral; she would have attended it if she had received the message earlier. Mrs. Hice had been married twice. She had been the wife of Ford (deceased), who was a son of the Ford whose death was reported in the message. There were children of that marriage, and she had great affection, etc., for the grandfather who died June 19, 1925. There is a conflict in the testimony as to some of the matters just stated, but, in view of the questions now involved, they may be taken as established facts.

Daisy Hice, joined pro forma by her husband, brought suit and recovered judgment for damages incurred by reason of negligent delay in delivery of the message. The judgment was reformed, and as reformed affirmed, by the honorable Court of Civil Appeals with an opinion which more fully describes the case. 282 S. W. 923.

Writ of error was allowed upon an assignment reading as follows:

"The Court of Civil Appeals erred in affirming the judgment of the district court of Lamar county, and in holding that the statement by Mrs. Sullivan that 'if Mamma does not get the message it would almost kill her,' which statement was made subsequently to the time of the making of the contract for transmission and delivery of the message, was sufficient to put the plaintiff in error on notice that defendant in error would suffer mental anguish if deprived of the privilege of attending the funeral of the deceased through the negligence in the delivery of such message, because such notice to be sufficient must be given at the time the contract for transmission and delivery is made."

[1] The record exhibits just basis for the inference that the information contained in Mrs. Sullivan's statement was conveyed to proper agents of the company at a time and under circumstances which left it ample opportunity to prevent injury through exercise of due care. That inference must now be regarded as established fact, since it is embodied in a judgment which is not challenged for lack of evidence to support it in this respect; and that Mrs. Sullivan's statement was such as to inform a reasonably intelligent person that affectional relations had existed between Daisy Hice and the deceased cannot be doubted. Telegraph Co. v. Shef-field, 71 Tex. 570, 10 S. W. 752, 10 Am. St. Rep. 790.

The question presented, then, is whether notice thus given was insufficient because not given at the time when the telegram was offered by Lewis Ford and accepted by the company. Upon the supposed authority of Daniel v. Western Union Tel. Co., 61 Tex. 452, 48 Am. Rep. 305; Western Union Tel. Co. v. Moore, 76 Tex. 66, 12 S. W. 949, 8 Am. St. Rep. 25; Western Union Tel. Co. v. Coffin, 88 Tex. 94, 30 S. W. 896; Railway Co. v. Belcher, 89 Tex. 428, 35 S. W. 6; S. W. Tel. & Tel. Co. v. Gotcher, 93 Tex. 114, 53 S. W. 686; Western Union Tel. Co. v. Wilson, 97 Tex. 22, 75 S. W. 482; City of Brownsville v. Tumlinson (Tex. Civ. App.) 179 S. W. 1107; Western Union Tel. Co. v. Twaddell, 47 Tex. Civ. App. 51, 103 S. W. 1120; and Telephone Co. v. Solomon, 54 Tex. Civ. App. 306, 117 S. W. 214—it is insisted notice in such a case, to be effective at all, must be given at the time of the contract.

The question presented is circumstanced by much difficulty, and the impossibility of harmonizing what has been written upon the subject is apparent. It must be admitted, for example, that the opinions in Western Union Tel. Co. v. Coffin and in M., K. & T. Ry. Co. v. Belcher, supra, contain expressions directly supporting the contention of plaintiff in error while in Bourland v. C. O. & G. Ry. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647, notice given subsequent to entry into the contract is allowed as a predicate for the recovery of damages arising out of so-called special circumstances theretofore unknown to the carrier.

The exact point of the relevant expressions in Western Union Tel. Co. v. Coffin, as it appears to us, was not essential to the decision made. The only notice given in respect to the telegram there was what was given at the time when it was filed and solely by its language. Notice subsequently given was neither pleaded nor proved. Nor was there any proof of mental suffering unless from the mere fact of relationship existing between brothers-in-law such pain could be rightly inferred. And what the court actually decided was that the judgment was "unauthorized by the proof," since there was "neither proof of notice to the telegraph company of the special circumstances nor of the actual suffering by plaintiff."

M., K. & T. Ry. Co. v. Belcher, as reported in 89 Tex., must be read with a former opinion in the case reported at page 549 et seq., 88 Tex., 32 S. W. 518, and a subsequent opinion reported at page 593 et seq. of 92 Tex., 50 S. W. 559, and the opinion of the Court of Civil Appeals (47 S. W. 384). In the earliest opinion it was held that "notice to the agent at Gainesville of the special damage likely to result from delay long enough to have en-

abled him to notify the agent at Sherman before the latter executed the bill of lading" was not "sufficient to render appellant liable therefor," and the holding was put upon the ground that notice to the Gainesville agent, under the facts, was not notice to the company at all, since he did not have power to act for it in that particular matter. In the second opinion (89 Tex.) it was made to appear that the Gainesville agent had received notice of the special circumstances prior to the time when the bill of lading was executed (by another agent) at Sherman, and this information was by him conveyed to the company's trainmaster at Sherman before the delay in transportation occurred and, possibly, before the bill of lading was signed, and the exact points decided are thus stated:

"Since it does not appear that the trainmaster had any authority to make, or control over the agent at Sherman in the matter of making, contracts of shipment for the company, or that it was his duty to communicate to such agent information with reference thereto, it follows from the principles above discussed and those stated in our former opinion in this case, 88 Tex. 549 [32 S. W. 518], that notice to the trainmaster should not be regarded as notice to the company or as binding on it and notice of the prospective damage given to the trainmaster in time to have prevented the damage, but after the contract of shipment had been made by the agent at Sherman, would not have rendered the company liable, and that notice to the trainmaster of the prospective damage in time for him to have notified the agent at Sherman before the latter made the contract for the shipment would not have rendered the appellant liable."

It seems to us that the effect of notice to the "trainmaster" under the circumstances disclosed, rather than the effect of notice given to the principal subsequent to execution of the bill of lading, was the real question involved and decided in the second opinion. This idea, we think, finds support in the court's reference to its former opinion and in its citation of Railway Co. v. Faulkner, 88 Tex. 649, 32 S. W. 883.

The thought has support also in subsequent action in the case. The opinions in 88 and 89 Texas were rendered upon certified questions, and the result was that the cause was remanded by the Court of Civil Appeals. A new trial terminated with a judgment in favor of the railway company, and upon appeal the judgment was affirmed. 47 S. W. 384. The affirmance rested largely upon that court's understanding of the opinion in 89 Texas. The Court of Civil Appeals found that the evidence disclosed the following: (1) The carload of hulls was delivered to the company at Sherman before 2 p. m., on December 24th, and at that time "the local agent at Sherman who received same and issued the bill of lading had no notice of the necessitous condition of Belcher at Gainesville."

288 S.W.—12

(2) The "Gainesville agent" at 2:05 p. m. that day telegraphed to the "trainmaster" at Denison information of the "necessitous condition," and that message was repeated by the "trainmaster" to the "local agent at Sherman" at 5:52 p. m. that day. The evidence also tended to show that the company subsequently operated a train out of Sherman to Denison on December 24th and one from Denison to Gainesville on December 25th, so that the hulls could have been transported to Gainesville in time to prevent or minimize the injury And upon the supposed authority of the opinion in 89 Texas the Court of Civil Appeals held that the company was not liable. Writ of error was allowed, and the correctness of that ruling was urged upon the Supreme Court in support of the judgment of affirmance. If the ruling was correct, it seems manifest that refusal by the trial court of a special charge requested by Belcher and copied below was also correct or, at least, that error in its refusal was harmless; and this seems true of all other errors then assigned.

Belcher had requested a special charge which reads as follows:

"But if you find that the defendant was guilty of negligence in not getting the car of hulls out of Sherman on December 24, 1892, on which day it ran a train from Sherman to Denison, and if you further find that, but for this negligence, the delay in the transportation would not have occurred, then you should find for the plaintiff, if you find the other issues submitted to you in his favor. If you find that the defendant ran a train from Denison to Gainesville on December 25, 1892, and that it was guilty of negligence in holding that car in Sherman on December 24, 1892, and that but for this negligence the car of hulls would have been transported to Denison in time to have been brought to Gainesville in the train which it ran from Denison to Gainesville, December 25, 1892, then upon this issue you should find for the plaintiff."

The Supreme Court held that the charge "should have been given by the court." In view of the facts that the only relief sought was for "special damages" and that notice of the "necessitous conditions" was not given at the time of making the contract, it is impossible to understand the importance of this charge unless failure to use due care after notice subsequently given is a predicate for liability.

If, therefore, the action of the Supreme Court evidenced by the last opinion written by it in the Belcher Case (92 Tex.) is to be taken as authoritative precedent, the general expressions used in the former opinion (89 Tex.) must be regarded as limited, and notice of special circumstances at the time of making the contract is not an indispensable requisite of liability. Perforce, notice subsequently given in time to prevent injury if treated with diligence must have some effi-

cacy. These views, we think, have practical illustration in Bourland v. C. O. & G. Ry. Co., supra, despite some language of possible contrary import to be found in that opinion.

Nevertheless, if the general expressions used in Western Union Tel. Co. v. Coffin, supra, in M., K. & T. Ry. Co. v. Belcher (89 Texas), supra, and in other like cases, are to be given complete effect, no liability exists in respect to the message in question. But if it is true of thóse opinions, as it was true of the opinion in Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989 (see Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566), that elaborative general expressions are not to be "taken as authoritative," liability does exist and the judgment of the Court of Civil Appeals is correct. Our view is that the language used to the effect that notice, to be effectual, must be given at the time of making the contract expresses obita.

[2, 3] On principle, too, we believe the effect of those expressions is rendered inapplicable by the fact that liability was there treated as depending entirely upon the law concerning breaches of contract; whereas, in respect to public utilities, we think, liability may arise ex delicto generally (G. C. & S. F. Ry. Co. v. Levy, 59 Tex. 542, 46 Am. Rep. 269; Elder Dempster Co: v. St. L. S. W. Ry. Co., 105 Tex. 628, 154 S. W. 975), or as for a tort in respect to a right founded upon a contract (Hale v. Bonner, 82 Tex. 33, 34, 17 S. W. 605, 14 L. R. A. 336, 27 Am. St. Rep. 850). As to the latter aspects the rule is that—

"The wrongdoer shall be answerable for all the injurious consequences of his tortious acts, which, according to the usual course of events and general experience, were likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated." McAllen v. Tel..Co., 70 Tex. 245, 7 S. W. 717; Western Union Tel. Co. v. Linn, 87 Tex. 7, 12, 26 S. W. 490, 47 Am. St. Rep. 58; Hale v. Bonner, supra.

The "tortious act" here was the negligence which happened after the notice was given; prior to the time of its commission the company was informed that failure to get the message "would almost kill" Daisy Hice, and it ought to have "foreseen and anticipated" that mental anguish would result from its negligence. Hale v. Bonner, supra.

In such a case as that now before us, neglect to use proper care after notice given in time to prevent injury makes a cause of action, according to our view, and we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed.