Fort Worth & Denver City Railway Company v.
Carlock & Gillespie.

Decided July 3, 1903.

**1.—Attorney and Client—Contract—Validity.**

A promise by an attorney to defray all the expenses incident to the collection of the client's claim for damages is a promise to give or grant a valuable thing to the client within the meaning of the statute making it a misdemeanor for an attorney at law to "promise to give, loan or otherwise grant money or other valuable thing to the person from whom such employment is sought before such employment in order to induce such employment." Gen. Laws, 1901, p. 125.

**2.—Same—Inducing Employment.**

Whether such promise was made to induce the employment, or was merely an incident to it, is held under the evidence in this case to have been properly a question for the jury.

**3.—Same—Interest in Cause—Public Policy.**

Since the law of this State permits contracts giving the attorney a part interest in the client's claim as compensation for collecting it, a clause in such contract prohibiting the client from settling the claim without the attorney's consent is not against public policy, this being the law without such clause.

**4.—Same—Failure to Pay Occupation Tax.**

The failure of a lawyer to pay his occupation tax, although a penalty for such failure is imposed by the penal statutes, will not bar his right to recover on a cause of action assigned to him by his client as compensation for his professional services.

Appeal from the County Court of Tarrant.    Tried below before Hon. R. T. Milam.

*Stanley, Spoonts & Thompson* and *Marshall Spoonts,* for appellant.

*Carlock & Gillespie,* pro se.

STEPHENS, ASSOCIATE JUSTICE.—E. J. Wynn, who had sustained personal injuries through the negligence of appellant, employed appellees, a firm of lawyers, to collect his claim for damages, the contract of employment reading:

"Ft. Worth, Texas, Feb. 8, 1902.—This agreement between E. J. Wynn and Carlock & Gillespie witnesseth, that the said Wynn has this day employed said Carlock & Gillespie to collect, by suit or otherwise, a claim against the Fort Worth & Denver City Railway Company for personal injuries to said Wynn, sustained on the 16th day of January, 1902, at Sanborn, Texas, said injury consisting of a crushed knee-cap. In consideration of said services of Carlock & Gillespie in and about said claim the said Wynn hereby agrees to give to said Carlock & Gillespie one-half of what may be recovered from said railway company, either by suit or otherwise; provided, that if said claim is compromised before suit, said Carlock & Gillespie shall have for their services one-fourth of the amount collected.

"To secure said Carlock & Gillespie, I hereby transfer a one-half interest in and to said cause of action. It is further agreed and understood that said Wynn is to be at no expense in and about said matter, and that if nothing is recovered on said claim, said Carlock & Gillespie are to get nothing for their services, and said claim is not to be compromised without the consent of all parties hereto."

Appellees gave appellant notice of the claim and of their interest in it, and brought suit for Wynn to collect it. Pending this suit appellant paid Wynn $300 in full satisfaction of the claim, and refused to pay appellees anything. This suit was consequently brought by them and resulted in a verdict and judgment in their favor for $150, the court instructing the jury to so find.

Complaint is made of the peremptory instruction upon the ground that the agreement that Wynn was to be "at no expense in and about said matter" made the contract of employment obnoxious to that clause of the Act of 1901 which made it a misdemeanor for an attorney at law, in seeking or obtaining employment, to "promise to give, loan or otherwise grant money or other valuable thing to the person from whom such employment is sought before such employment in order to induce such employment." Acts of 1901, p. 125. We are inclined to agree with counsel for appellant that the promise of an attorney at law to defray all the expenses incident to the collection of his client's claim for damages, if not a literal promise to pay him money, is at least a promise to give or grant a valuable thing to his client; and such is the construction a statute very similar to our own has recently received in New York in the case of Stedwell v. Hartmann, 77 N. Y. Supp., 498, the New York Code (sec. 74) reading: "An attorney or counselor shall not * * * promise or give or procure to be promised or given a valuable consideration to any person, as an inducement to placing * . * * a demand of any kind for the purpose of bringing an action thereon." There can be no substantial difference between a promise to give or grant money or other valuable thing, as denounced in our statute, and a promise to give a valuable consideration, as denounced in the New York Code. In the case above cited arising under the New York Code, the question was thus stated and decided: "But the question still remains as to the validity of a contract by which an attorney, in consideration of having a claim placed in his hands for suit, gives the valuable consideration as an inducement that the attorney will himself pay all the expenses, or, in other words, that he himself will maintain the suit. * * * In the case at bar the agreement was not only to advance money, but to carry on the suits or actions at the expense of the attorney himself, under the agreement that he should receive a certain compensation, and thus he was promoting the suit, and defraying for the plaintiff the expense thereof."

We have yet to determine whether the promise to give a valuable consideration in this instance, that is, to defray the expenses of collecting

the claim, was made in order to induce the employment, or rather, whether the evidence raised that issue; and we have reached the conclusion that it did. The fact that the contract of employment contained such a promise was itself some evidence that the promise was made to induce the employment. On the other hand, the circumstances under which the contract was made tended to raise the inference that the promise complained of may not have been made as any inducement whatever to the employment, but was a mere incident of it, affecting rather the terms than the fact of employment. This phase of the issue does not seem to have been fully developed on the trial.

The contract in question is further assailed, by proposition but without assignment of error, for being against public policy because of the clause prohibiting Wynn from settling the claim without the consent of appellees, in support of which Davis v. Webber, 66 Ark., 190, 49 S. W. Rep., 822, 45 Law. Rep. Ann., 196, is cited. That decision is placed upon the ground that such contracts "foster and encourage litigation" and are therefore against that public policy which favors the settlement of disputes "without hindrance from disinterested parties." To the same effect is Davis v. Chase (Ind.), 64 N. E. Rep., 88. It seems to us, however, that the reason for such holding is wanting in this instance, since appellees acquired by valid assignment a one-half interest in the cause of action itself. Railway v. Miller, 21 Texas Civ. App., 609, 53 S. W. Rep., 709; Railway v. Andrews, 28 Texas Civ. App., 477, 67 S. W. Rep., 924. That assignment placed it in their power to prevent a settlement of the controversy, and it would hardly be against public policy, therefore, to merely add a stipulation which could do no more than that. In other words, where the law, as it does in this State, permits a transfer in part of a claim for damages to the attorney as compensation for his services, thus placing it in his power to prevent a compromise of the entire claim with the client, there seems little room for the contention that public policy is violated by a clause in the contract which can add nothing to this power.

It remains to determine whether the failure of a lawyer in Texas to pay his occupation tax will bar his right to recover on a cause of action assigned to him by his client as compensation for his professional services. It seems clear from our civil statutes on the subject that, however it may be with some other occupations therein mentioned, it was not the intention of the Legislature to make an occupation tax license a condition precedent to the right to practice law. Rev. Stat., arts. 5049, 5054, and pages 1014, 1015, 1022. It seems equally clear from articles 112, 113 and 114 of our Penal Code that the only object of imposing a penalty for pursuing an occupation without paying the tax and obtaining a license was the collection of the tax. The case of Singer Manufacturing Co. v. Draper (Tenn.), 52 S. W. Rep., 879, so much relied upon, arose under article 604 of the Code of Tennessee (1884), which made the occupations therein enumerated privileges, and, besides

taxing them, expressly declared that they should not be pursued without license.    In Amato v. Dreyfus, 34 S. W. Rep., 450, it was held that the failure of a land agent to pay his occupation tax did not bar his right to recover his commissions on a land sale.

Because the court instructed a verdict for appellees, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*