MATAGORDA COUNTY DRAINAGE DIST. NO. 1 et al. v. GAINES & CORBETT.†

(Court of Civil Appeals of Texas. San Antonio. Oct. 18, 1911. Rehearing Denied Nov. 8, 1911.)

1. DRAINS (§ 20*)—DRAINAGE DISTRICT—ACTIONS.

Drainage Act 1907 (Acts 30th Leg. c. 40) § 53, provides that all drainage districts may by the drainage commissioners sue and be sued in the name of such drainage district, and that all courts shall take judicial notice of the establishment of such districts. Held that, where a suit was brought against the district in its corporate name, and process was served on each of the commissioners, the citation being directed to the district as a municipal corporation, it was sufficient without making the commissioners parties.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 20.*]

2. DRAINS (§ 17*)—DRAINAGE DISTRICT—EMPLOYMENT OF COUNSEL—STATUTES.

Drainage Act 1907 (Acts 30th Leg. c. 40) §§ 43, 44, provide that all contracts of drainage commissioners shall be reduced to writing, and signed by the contractors and drainage commissioners, and approved by the county judge; and section 45 declares that the work shall be done by any contractor under the supervision of the drainage engineer. Held, that such sections referred exclusively to contracts for the construction of drains and levees, and had no application to a contract by the drainage commissioners with attorneys for legal services, which was governed by section 51, authorizing the commissioners to employ counsel on terms approved by the county judge.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 17.*]

3. DRAINS (§ 17*)—DRAINAGE DISTRICT—EMPLOYMENT OF COUNSEL—CONTRACT.

Drainage Act 1907 (Acts 30th Leg. c. 40) § 51, authorizes drainage commissioners to employ counsel to represent the district, and to be the legal advisers of the commissioners on terms approved by the county judge. Held, that under such section the commissioners are authorized to employ a legal adviser to perform services in the future.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 17.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

4. DRAINS (§ 17*)—DRAINAGE DISTRICT—EMPLOYMENT OF COUNSEL—CONTRACT—VALIDITY—APPROVAL BY COUNTY JUDGE.

Under Drainage Act 1907 (Acts 30th Leg. c. 40) § 51, authorizing drainage commissioners to employ counsel on approval by the county judge, there could be no recovery for attorney's services rendered the district under a contract between plaintiffs and drainage commissioners, which the county judge expressly refused to approve.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 17.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by Gaines & Corbett against Matagorda County Drainage District No. 1 and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Linn, Conger & Austin, for appellants. Gaines & Corbett, in pro. per.

FLY, J. This is a suit for $1,507.60, instituted by appellees against Matagorda County Drainage District No. 1, W. S. Holman, county judge, and A. S. Collins, county treasurer of Matagorda county; $1,500 of the sum sued for being alleged to be due for legal services performed by appellees under a contract therefor, and $7.60 for a certified copy of the drainage law furnished by appellees. The treasurer answered that he owned no interest in the suit, and was ready to obey the judgment of the court as to the payment of the claim, and the other parties answered by plea to the jurisdiction as to the drainage district, by general and special demurrers and general denial, and pleaded specially that the drainage district is a public corporation with its powers and duties created by the law of Texas; that its business affairs are by law conducted by three commissioners appointed by the commissioners' court; that debts against the district could only be created by contracts in writing, signed by the drainage commissioners and approved by the county judge; that there were only two drainage commissioners, one having vacated his office by accepting the office of county commissioner; that the county judge had never signed or approved the contract on which the suit was based, nor had ratified the same, and a plea of non est factum was also filed. The cause was tried by the court, no jury being demanded, and judgment for $1,500 was rendered in favor of appellees. The facts are sufficiently set forth in connection with the different matters hereinafter discussed; the disposition of the case depending, not upon the facts, but upon the construction of the law bearing upon the contract.

[1] The first assignment claims error in the refusal of the trial judge to sustain appellants' plea to the jurisdiction, and their motion to quash the citation directed to the drainage district, for the reason that the drainage commissioners were not made parties, and all of them were not served. The petition alleged "that Matagorda County Drainage District No. 1 is a municipal corporation or political subdivision duly organized under the laws of the state of Texas, with authority to sue and be sued by and through its drainage commissioners; that V. L. Le Tulle, N. M. Vogelsang, and D. P. Moore, all of whom reside in Bay City, Matagorda county, Tex., are the present drainage commissioners of Matagorda County Drainage District No. 1." The citation directed the sheriff "to summon Matagorda Drainage District No. 1, a municipal corporation or political subdivision of which V. L. Le Tulle, N. M. Vogelsang, and D. P. Moore are drainage commissioners." It is provided by the General Laws of 1907, pp. 78 to 92, that the several counties of Texas may create and establish drainage districts, vote on drainage propositions, issue bonds for same, appoint commissioners, and do all things necessary to carry out the objects of the act; and in section 53 it is provided: "All drainage districts established under this act may, by and through the drainage commissioners, sue and be sued in all courts of this state, in the name of such drainage district, and all courts of this state shall take judicial notice of the establishment of all such districts."

The suit in this case was instituted in full compliance with the statute. It is against the drainage district, which is sued through the drainage commissioners, who were served with process, and the district thereby brought into court to answer the claim of appellees. There is no intimation in the law that the commissioners shall be made parties to the suit; the only requirement being that suits for the district should be instituted by them in the name of the district, and suits against the district should be through the commissioners. The only objects of the section were to authorize the commissioners to sue, and to indicate who should be served when the drainage district is sued. The return showed that the citation was served by delivering to each of the drainage commissioners a true copy of the citation. The service was perfect, and the court did not err in refusing to quash it. The case of Houston v. Emery, 76 Tex. 282, 13 S. W. 264, cited by appellants, sustains the service in this case, and the service fully meets the demands made by appellants in their argument. The case of Gaal v. Townsend, 77 Tex. 464, 14 S. W. 365, is one of mandamus, and is not applicable to this case.

[2] The petition alleged the execution of a contract of employment of appellees by the drainage commissioners, which contract was approved by the county judge of Matagorda county. In section 51 of the drainage act, the drainage commissioners are "empowered and authorized to employ counsel

to represent such district in the preparation of any contract or the conducting of any proceedings in or out of court, and to be the legal adviser of such drainage commissioners, upon such terms and for such fees as may be agreed upon by them and approved by the county judge, and such commissioners shall draw a warrant or warrants in payment for such legal services." That is the only section of the act that has any applicability to the employment of counsel. It is true that it is provided in sections 43 and 44 that "all contracts made by the drainage commissioners shall be reduced to writing and signed by the contractors and drainage commissioners and approved by the county judge," and that the contractors shall give bond as therein specified; but those sections evidently refer to contracts with persons, firms, or corporations for the construction of canals, drains, ditches, and levees, and not to legal services. This is apparent when the sections in question are read in connection with section 45, as they should be, where it is required that the drainage engineer shall furnish the contractor with a sectionized profile of the work contracted for, showing the details of the work, the number of cubic yards to be removed, and that the work shall be by the contractor under the supervision of the drainage engineer, and that the contractor should give a bond. Those matters and specifications could not refer to the services of an attorney and counselor of law, and the Legislature did not conceive that they had any such reference; and, recognizing the absurdity of requiring profiles and details as to cubic yards, heights, depths, and breadths to be submitted by an attorney, and for his services to be rendered under the supervision of a drainage engineer, passed section 51, which refers to no one but attorneys, and which is perfect in itself. The allegations of the petition meet the requirements of that section, and it follows that the numerous authorities cited do not have any application to this case. This disposes of the second, third, fourth, and fifth assignments of error.

[3] Section 51 of the drainage act of 1907 gives the drainage commissioners authority to employ counsel, without reference to pending litigation, for it provides not only for pending business and litigation, but also for the employment of a legal adviser for such drainage commissioners, which necessarily contemplates certain services to be performed in the future. The law permits the execution of a contract in the terms of the one upon which the suit is based. The petition alleged the contract was made between appellees and the drainage commissioners, and that the same "was then duly, regularly and legally approved by the then county judge of Matagorda county, Texas, Jesse Matthews, said contract being evidenced by a written proposal duly signed by the plaintiffs and accepted by the defendants, and entered on the minutes of said drainage district." It was further alleged that in the contract it was provided that certain fees should be paid for certain legal services, and that in addition it was provided that "fees for all services not specified above, to be reasonable compensation for the services performed; and to be fixed either before or after the service performed, as demanded by the commissioners in writing." The seventh assignment of error assails the petition on the ground that it does not allege that the compensation sought for legal services was reasonable. The attack on the petition in that regard is answered by an allegation contained therein "that the legal services so rendered by these plaintiffs to said drainage district were of the reasonable worth and value of $1,500, and that said services were necessary to said drainage district."

, It was alleged in the second paragraph of the petition that the contract was made with the drainage district "acting through V. L. Le Tulle, C. F. Baker, and W. O. Boney, the then duly appointed and qualified drainage commissioners of said district," and the criticism that when the commissioners were mentioned in a succeeding paragraph they were not mentioned as legally qualified and acting drainage commissioners is totally without merit, and the eighth assignment of error is overruled.

Section 51 of the drainage act permits a contract for legal services "upon such terms and for such fees as may be agreed upon by them and approved by the county judge," and it may be that it would be authority sufficient to support a contract for reasonable compensation for services to be performed, the right being reserved by the commissioners to have the amount fixed when a demand was made for it to be fixed; and if, as alleged, the $1,500 fee sued for was fixed and agreed to be paid under the terms of the original agreement it might be a legal contract, although it is not necessary to so hold. But the contract of employment upon which this suit must rest is an original one, independent of any former contract, and it must be tested by section 51 without the aid of any other contract. The last contract is as follows:

"State of Texas, County of Matagorda. Memoranda of a contract this day made and entered into by and between Matagorda County Drainage District No. 1 of Matagorda county, Texas, acting herein by its commissioners, V. L. Le Tulle, W. O. Boney and C. F. Baker, and Gaines & Corbett, witnesseth: That the said Gaines & Corbett hereby contract, covenant and bind themselves to perform the legal services incident to the management of the drainage district, until the date of the time of the completion of the present work contracted to be performed, and to bear their own personal expenses incident to the performance of said work, but said drainage district is to bear

any and all other expenses incurred in connection therewith, such as court costs, costs of copies of record, etc., for and in consideration of the sum of $2,500.00 to be paid as follows: $1,500.00 cash, to be paid immediately upon the execution of this contract and $1,000.00 to be paid at the end of the service contracted to be performed herein. And the said district does hereby covenant and bind itself to pay to said Gaines & Corbett, the sum of $2,500.00, $1,500.00 of which is to be paid herewith, and to pay the said further sum of $1,000.00 upon the completion of this contract, and to furnish to said Gaines & Corbett all data and information and to pay all costs incident to the service to be performed, except costs for personal expenses, which latter is to be borne by the said Gaines & Corbett out of such fees as are paid. The service to be performed is the legal service required by said drainage district, either in the courts or in connection with preparation of deeds and contracts and advice to the said commissioners when demanded. In testimony of all which witness the Matagorda County Drainage District No. 1, of Matagorda county, Texas, by its president, attested by its secretary, and Gaines & Corbett in their own proper persons this the 27th day of January, 1909. Matagorda County Drainage District No. 1, by V. L. Le Tulle, its President. W. O. Boney. Gaines & Corbett. Attest: C. F. Baker, Secretary."

The original contract was in the shape of a proposal by appellees to perform services, among them being the proposal to accept reasonable compensation for services the value of which was not agreed upon. In passing upon the proposal, the commissioners named the services for which an agreed sum was fixed, and approved them, but made no mention of any services for which an exact sum was named. There is nothing in their action to indicate that they were willing to agree to pay a reasonable sum for other services as set out in the proposal; but if there had been such action no reference whatever is made in the last contract to the first, and it can draw no strength or support from it. It must be treated as an original contract, which, under the law, could not become effective without the approval of the county judge. In the minutes of the commissioners, on January 27, 1909, they treat the contract as an original one, and it was concluded without reference to any former contract. No connection whatever was shown to exist between the first and second contract, and the first cannot be invoked in aid of the latter. C. F. Baker and V. L. Le Tulle, two of the commissioners, testified that they made two contracts with appellees, the first of which was approved by Jesse Matthews, county judge, on July 11, 1908. The facts all indicate a desire to set aside the former contract, as was said by Le Tulle: "It was the intention of the drainage commissioners at that time to make a contract with the attorneys so as to fix a stipulated fee, that we may avoid piecework, that we had been paying under the prior contract. We intended by the terms of the contract of January 27, 1909, to revoke all former contracts made." Appellees in their testimony state facts showing that the last contract was not dependent upon the first contract, but was as entirely a new contract as though no other had existed.

[4] The last contract, under which the services were performed, was not approved by the county judge, and appellees performed all of the services with full knowledge that he would not approve it. The new contract was dated January 27, 1909, and on March 5, 1909, a reorganized board of drainage commissioners repudiated the contract. The suit in which appellees claim to have represented the drainage district was not filed until February 20, 1909, at a time when appellees were fully cognizant of the fact that the county judge had not approved and would not approve the contract. The contract not having been executed as prescribed by the warrant of power granted by the Legislature to the drainage district, did the contract become effective? And, if it did not become effective, should appellees be permitted to recover for services rendered under an implied contract?

By the provisions of section 51 of the drainage act of 1907, the commissioners are empowered to employ counsel to represent the district "upon such terms and for such fees as may be agreed upon by them and approved by the county judge." It was clearly the intent of the Legislature to require as an essential the approval of the chief officer of the county; the official watchman of the county treasury undoubtedly by this requirement was made to safeguard and protect the fund that was raised by taxation of the inhabitants of a district, and to render more difficult the making of contracts which might squander a fund raised for the public good. The authority to contract for the services of attorneys is given by section 51 alone to drainage commissioners, and to that we must look to ascertain the mode of exercising the power. The law requires the approval of the county judge of contracts made by drainage commissioners for legal services, just as it requires the approval of contracts for canals and other improvements by the county judge.

It is the rule, stated by Dillon in his work on Municipal Corporations (5th Ed.) § 783, and fortified by numerous authorities, that when the mode of contracting is specially and plainly prescribed and limited that mode is exclusive, and must be pursued, or the contract will not bind the corporation. The rule is a salutary one, upholding the legislative checks and restraints put upon the officers of municipal corporations, and strictly construing the powers conferred upon them

in the disbursement of public funds. To hold that a contract made in a different mode from the exclusive one prescribed by the Legislature can be enforced would be to nullify and destroy the law, and to set up judicial discretion or judicial pleasure instead thereof. Experience has taught how prone municipal officers are to squander and dissipate public funds, even when held to the strict letter of their warrant of authority, and if requirements of the statute, which the Legislature has deemed necessary, can be set aside by court the last safeguard has been destroyed, and the public left at the mercy of improvident or unscrupulous servants. Drainage commissioners are the agents of their respective districts in attending to and superintending its affairs; but, when debts are to be incurred and money expended, the law provides that they cannot act without the approval of the county judge. The mode of incurring liabilities is prescribed by statute, and, as said by Chief Justice Roberts, in Ferguson v. Halsell, 47 Tex. 421: "The prescribing of a mode of exercising a power by such subordinate agencies of the government has often been held to be a restriction to that mode."

In the case of Bryan v. Page, 51 Tex. 532, 32 Am. Rep. 637, a suit was instituted to recover of the city of Bryan the reasonable value of legal services rendered under employment by the mayor, and the court, in reversing and rendering judgment for the city, held: "The charter gave the power to employ legal counsel, but prescribed that the power be exercised by, or at all events in accordance with, an ordinance of the common council. The charter—the source of all the power of the mayor or council over the subject—having limited the mode of its exercise, they could not in a different mode make a valid contract; nor could they by any subsequent approval or conduct impart validity to such contract." To the same effect is Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263.

The authorities cited, as well as various others, hold that, where the power of contracting is limited to a certain mode, the officers of a municipal corporation cannot, in a different mode, make a valid contract; nor can they by any subsequent approval or conduct vitalize such contract; nor would the law imply such contract. Appellees were bound in making the contract to see that it conformed to the law, and the facts clearly show that they not only knew that the contract was not binding without the approval of the county judge, but that they used various means to obtain his approval, and endeavored to obtain a ratification of the contract by the new board of commissioners. As said by the Court of Appeals of New York, in Smith v. City of Newburgh,

77 N. Y. 131: "An absolute excess of authority by the officers of a corporation in violation of law cannot be upheld; and, when the officers of such a body fail to pursue the strict requirements of a statutory enactment under which they are acting, the corporation is not bound in such cases,. the statute must. be strictly followed; and a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effective." See, also, McDonald v. New York, 68 N. Y. 23, 23 Am. Rep. 144.

The judgment will be reversed, and judgment here rendered that appellees take nothing by their suit, and appellants recover all costs in this behalf expended.