CITY OF BROWNSVILLE v. TUMLINSON. (No. 5510.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 20, 1915. On Motion for Rehearing, Nov. 17, 1915.)

1. PLEADING ⬡183—SUPPLEMENTAL ANSWER —NECESSITY.

Where a supplemental petition consisted solely of exceptions and denials, and alleged no new matter, there was no place in the pleadings for a supplemental answer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 389–396; Dec. Dig. ⬡183.]

2. APPEAL AND ERROR ⬡1041 — HARMLESS ERROR—AMENDMENT OF PLEADINGS.

Where a pleading sought to be filed by defendant after its announcement of ready, although styled a supplemental answer, was in response to the amended original petition and was therefore an amendment, and the court permitted defendant to file a trial amendment, setting up new matter in defense of plaintiff's suit, it did not appear that defendant was injured by the court's refusal to permit defendant to withdraw its announcement of ready in order to file such so-called supplemental answer.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4106–4109; Dec. Dig. ⬡1041.]

3. PLEADING ⬡199 — DEMURRER — TIME FOR DEMURRER.

If a general demurrer is well taken, it should be sustained at any stage of the proceedings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 464–469; Dec. Dig. ⬡199.]

4. APPEAL AND ERROR ⬡1040 — HARMLESS ERROR—REFUSAL TO RULE ON DEMURRER.

Defendant cannot complain of the court's refusal to rule on a general demurrer, unless it is well taken.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. ⬡1040.]

**5. APPEAL AND ERROR ⊕⇒242—FUNDAMENTAL ERROR—REFUSAL TO RULE ON DEMURRER.**

When the court refuses to rule on a general demurrer which is well taken, the case will be reversed for fundamental error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1417–1425; Dec. Dig. ⊕⇒242.]

**6. PLEADING ⊕⇒228 — DEMURRER OR EXCEPTION.**

A special exception which did not go to the form of the pleading, but asserted that defendant was not bound by the contract sued on, because it was an oral one, and that plaintiff therefore stated no cause of action, was a general demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ⊕⇒228.]

**7. MUNICIPAL CORPORATIONS ⊕⇒243 — CONTRACTS—FORM—ORAL CONTRACTS.**

As Rev. St. 1911, arts. 769–771, authorizing cities to construct electric light plants and waterworks are silent as to how contracts with their customers shall be made, a contract by a city to furnish electric current was binding on the city, although oral; the superintendent who made the contract having special authority to make oral or written contracts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 675–677; Dec. Dig. ⊕⇒243.]

**8. LICENSES ⊕⇒39—REMEDY OF UNLICENSED PERSONS.**

Where plaintiff intending to engage in the moving picture business, contracted with defendant for electric current with which to light his theater building and conduct a moving picture show therein, and defendant's failure to furnish such current delayed him in engaging in such business, he was not precluded from recovering damages sustained before engaging in the business, because he did not, at that time, have any license from the state to conduct such business, as he was not required to have a license before he engaged in the business, especially as the statute imposing an occupation tax upon the theater business was passed for the purpose of raising revenue, and he paid the tax the day he commenced business.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 76–78; Dec. Dig. ⊕⇒39.]

**9. EVIDENCE ⊕⇒433 — PAROL EVIDENCE TO VARY WRITING—MISTAKE.**

Where a written transfer by a partner of his interest in the partnership business did not include a transfer of claims due the firm, and it did not appear on the face of the instrument, or otherwise, that the instrument was intended to evidence a part only of the transaction, but, on the contrary, it was claimed that the failure to include a transfer of claims resulted from a mutual mistake, it could not be shown by parol that there was a transfer of such claims, as the rule that where the original contract was verbal and entire, and a part only reduced to writing, the parol part may be shown by oral evidence cannot be resorted to for the purpose of adding other property to that mentioned in a conveyance, when the parties undertake to make the written instrument cover the entire transaction; the remedy when a mutual mistake is made in describing the property transferred being to bring an action to reform the conveyance.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1990–2004; Dec. Dig. ⊕⇒433.]

**10. REFORMATION OF INSTRUMENTS ⊕⇒33, 36 —ACTIONS—PLEADING—PARTIES.**

In an action on a claim due a partnership by one of the partners who had acquired the interest of the other partner in the partnership business, if it was desired to reform the instrument transferring such partner's interest so as to include claims due the firm, the petition should have contained proper allegations, and the partner who made the transfer should have been made a party, so that the reformation of the instrument would be binding on him.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 122–139, 141.–146; Dec. Dig. ⊕⇒33, 36.]

**11. DAMAGES ⊕⇒23—BREACH OF CONTRACT— DAMAGES NOT WITHIN THE CONTEMPLATION OF THE PARTIES.**

Where defendant's representative understood, when he contracted to furnish electric current to plaintiff for his theater building, that the business to be conducted therein was that of a moving picture show, it was not within the contemplation of the parties that a breach would cause damages on account of salaries to be paid members of a vaudeville troupe.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58, 62; Dec. Dig. ⊕⇒23.]

**12. DAMAGES ⊕⇒23—BREACH OF CONTRACT— DAMAGES NOT WITHIN CONTEMPLATION OF PARTIES.**

Notice to defendant's representative, after the contract was made and before the breach, was not sufficient to entitle plaintiff to recover as special damages the amount paid to such vaudeville troupe.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58, 62; Dec. Dig. ⊕⇒23.]

**13. DAMAGES ⊕⇒176—BREACH OF CONTRACT— EVIDENCE—LOSS OF PROFITS.**

In an action for breach of contract to furnish electric current for plaintiff's theater building, plaintiff, in testifying to his loss of profits, was not bound to estimate his loss for each night separately.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 461, 468, 471, 493; Dec. Dig. ⊕⇒176.]

**On Motion for Rehearing.**

**14. EVIDENCE ⊕⇒442 — PAROL EVIDENCE TO VARY WRITING.**

In an action by one member of a partnership on a claim due the firm, evidence *held* insufficient to show that the written transfer of the other partner's interest in the firm business, which was not in the record and did not include claims due the firm, purported to express only a part of the transaction, so as to authorize parol proof of the other part, especially where plaintiff expressly testified that the instrument was intended to cover the claims, but that they were omitted by mutual mistake.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1897; Dec. Dig. ⊕⇒442.]

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by T. R. Tumlinson against the City of Brownsville. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded.

T. A. Kinder and H. W. Williams, both of Brownsville, for appellant. F. W. Seabury, of Brownsville, for appellee.

MOURSUND, J. T. R. Tumlinson sued the city of Brownsville for $1,399.70, with interest, alleged to be due because of the breach of a contract, whereby said city bound itself to furnish said Tumlinson and O. N. Boston with electric current for the purpose of lighting a theater building and conducting a moving picture show therein.

Plaintiff alleged that he had acquired Boston's interest in the claim sued upon. The damages claimed were: (1) Special damages in the sum of $210, of which amount $100 was paid to members of a vaudeville troupe under contract made before plaintiff ascertained that no electric current would be furnished, $5 paid for advertising, and $105 for loss of profits during the week for which said vaudeville troupe had been engaged; (2) net actual and necessary expenditures for substitution of another source of electricity during the 90 days the city refused to furnish same, amounting to $689.70; (3) amount of loss of business and patronage, resulting from inferior service thus forced on Tumlinson & Boston $500. Defendant answered by general demurrer, special exceptions, denials of the allegations of the petition, and specially pleaded that it had no notice or knowledge of any contract made by Tumlinson & Boston with any vaudeville troupe, or that he could not conduct the show unless he procured current, or that he would lose any profits if the current was not furnished. Defendant also pleaded that Tumlinson & Boston were indebted to it in the sum of $26.75 at the time its representative, Burks, made the contract sued upon, but that Burks did not know of such indebtedness until after making the contract, and then, acting under an ordinance of the defendant authorizing him to cut off all electric current connected for patrons whose bills remained unpaid for more than five days, he disconnected the current at plaintiff's theater. Defendant further pleaded that, at the time the contract sued upon was made, Tumlinson & Boston had not procured a license for the purpose of running a theater, and therefore could not recover. Plaintiff, by supplemental petition, denied the allegations contained in the answer. Defendant, by trial amendment, alleged that Tumlinson & Boston were guilty of negligence in purchasing and installing a gasoline engine of inferior quality for the purpose of running a dynamo to produce electricity for their theater, and also in undertaking to operate such engine without being competent to do so, and that the damages were caused by such negligence on the part of Tumlinson & Boston. It also pleaded that plaintiff conducted his business on Sunday, in violation of law, and therefore should not be permitted to recover. By agreement these allegations were considered denied without any pleading being filed. The trial resulted in a verdict in favor of plaintiff for $1,354.70, with interest from October 1, 1909, and judgment was entered in accordance with such verdict.

[1, 2] By the first two assignments of error complaint is made of the refusal to permit defendant to withdraw its announcement of ready, for the purpose of filing its first supplemental answer and "Adoption of its First Amended Answer." These assignments are without merit. There was no place in the pleadings for a supplemental answer. The supplemental petition consisted solely of exceptions and denials, and did not allege any new matter. The pleading which was sought to be filed, although styled supplemental answer, was in fact an amendment, as it was in response to the amended original petition. Defendant was permitted to file a trial amendment, in which it set up new matter of defense to plaintiff's suit, and it does not appear that defendant suffered any injury by reason of the ruling complained of.

[3-7] By the third assignment appellant complains of the refusal of the court to permit it to present its general demurrer and a special exception after the parties had announced ready for trial and some of the jurors had been selected. If a general demurrer is well taken, it should of course be sustained at any stage of the proceedings, but defendant cannot complain when the court refuses to rule upon a general demurrer, unless it is well taken, and if it is, the case will be reversed for fundamental error. The special exception not ruled on by the court did not go to the form of the pleading, and was a general demurrer, for it asserted that because the contract sued upon was an oral one, the defendant was not bound thereon, and therefore plaintiff stated no cause of action. The same question was raised by objection to the evidence, and by the fourth assignment of error appellant contends that its objection to the admission of evidence of an oral contract should have been sustained. We are not cited to any statute or charter provision which required the contract to be made in writing. The statutes authorizing cities to construct electric light plants and waterworks are silent as to how contracts shall be made with their customers. Articles 769–771, R. S. 1911. The superintendent who made the contract, had express authority to make oral or written contracts. He reported the contract in his next monthly report. In the analogous case of drainage districts it has been held that contracts need not be in writing where the statute does not specify written contracts. Matagorda Drainage District v. Gaines, 140 S. W. 370; Swearingen v. Drainage Dist., 142 S. W. 1006; Hidalgo Dist. v. Swearingen, 158 S. W. 211. See, also, Cyc. vol. 28, p. 666. We conclude there is no merit in the contention that the city is not bound by an oral contract, and that the petition was not subject to general demurrer because the suit was upon an oral contract, nor was it subject to general demurrer upon any other ground. It, therefore, follows that assignments 3 and 4 must be overruled.

[8] By the fifth assignment complaint is made because the court permitted plaintiff to testify to certain evidence of damages incurred prior to June 11, 1909. This testimony was objected to on the ground that plaintiff

could not recover such damages, because at the time they accrued he had no license from the state to conduct the business. This is not a case in which the plaintiff seeks to recover on account of a contract made in conducting a business without license, but one in which plaintiff, intending to go into business, made a contract for that purpose, which was breached by the other party. He was not required to pay an occupation tax until he engaged in the business, and this he claims he was prevented from doing until June 11th on account of the city's breach of the contract. The evidence warrants a finding that on June 11th, the very day on which he began business, he paid the occupation tax, but the receipt was not issued until June 30th. The receipt showed that the time for which payment was made began on June 11th. As the assignment does not relate to any damages save those claimed for the time preceding June 11th, we need not consider those accruing between June 11th and June 30th. The law does not preclude him from recovering the damages suffered by reason of the breach of the contract merely because he failed to pay the occupation tax for a period of time in which he was not engaged in the business. Even had this been a case where suit was brought for money due on account of the conducting of the business, it seems plaintiff could recover, as the statute imposing an occupation tax upon the theater business was passed for the purpose only of raising revenue. Ft. Worth & D. C. Ry. v. Carlock & Gillespie, 33 Tex. Civ. App. 203, 75 S. W. 931; Watkins Land Mortgage Co. v. Thetford, 43 Tex. Civ. App. 537, 96 S. W. 72; Amato v. Dreyfus, 34 S. W. 450; Cyc. vol. 25, p. 633. The assignment is overruled.

[9, 10] Plaintiff testified to the transfer by Boston of all of his partnership interest in the theater business to plaintiff, including all claims due the firm, and stated that the transfer was in writing. Afterwards plaintiff was recalled, and he then testified that he had found the transfer and ascertained that it did not include a transfer of the claims due the firm; that this was a mistake, for the entire agreement between him and Boston included the transfer to himself of all claims as well as all personal property. This testimony was objected to on the ground that there was no allegation in the petition to the effect that the word, "claims," had been left out of the transfer by mistake, and therefore the testimony was inadmissible. It was not shown by plaintiff that the instrument on its face purported to evidence only part of the transaction, nor does plaintiff's testimony show that they did not undertake to put in writing the entire trade between the parties. On the contrary his testimony shows that it was the intention of the parties to embrace in the written instrument the entire transaction, and that the failure to do this resulted from a mutual mistake. Under such circumstances plaintiff cannot fall back upon the rule that where the original contract was verbal and entire, and a part only reduced to writing, the parol part may be shown by oral evidence. That rule was never intended for the purpose of adding other property to that mentioned in a conveyance when the parties undertake to make the written instrument cover the entire transaction. When a mutual mistake is made in describing the property transferred the remedy is to bring an action to reform the conveyance. Clark & Plumb v. Gregory, Cooley & Company, 87 Tex. 191, 27 S. W. 56; Coverdill v. Seymour, 94 Tex. 9, 57 S. W. 37. Plaintiff cannot prove his title to Boston's half interest in the claims by parol testimony conflicting with a written instrument by which the parties undertook to state their contract, and such parol evidence of ownership should have been excluded. If it was desired to reform the instrument for mutual mistake, and in the same suit recover thereon, the petition should have contained appropriate allegations, as contended by defendant, and in addition Boston should be a party to the suit, so that the reforming the instrument would be binding upon him. The sixth and seventh assignments of error are sustained.

[11, 12] Appellant contends that its representative, Burks, had no notice or knowledge that plaintiff had contracted with a vaudeville troupe for performances beginning June 1 and ending June 7, 1909, and that he would suffer loss if said troupe was unable to exhibit. The evidence shows that Burks had notice before the breach of the contract that the theater was intended to be used for vaudeville performances, and that a troupe had been procured by Tumlinson & Boston, but there is no evidence that he was informed, at the time or prior to the making of the contract, that the theater would be used for that kind of exhibitions. He testified that he knew they intended to use it for moving picture exhibitions. It cannot be held that it was within the contemplation of the parties that a breach would cause damages on account of salaries to be paid members of a vaudeville troupe, when it was understood that the business to be conducted was that of a moving picture show. Notice given after the contract is made, though prior to the breach thereof, is not sufficient to entitle a party to recover special damages for breach of contract. Railway v. Belcher, 89 Tex. 428, 35 S. W. 6; Terrell, Atkins & Harvin v. Proctor, 172 S. W. 1001. The eighth assignment of error is sustained.

[13] Appellee testified that his loss of profits during the time they ran the show without current from defendant was $500. This was his estimate for the entire time, and he testified that at first the attendance was very good, but gradually fell off. It was not incumbent upon him to estimate his

loss for each night separately, nor would anything have been gained by having him do so. Appellant contends that appellee testified to a loss of $15 per night, but admitted that there was no loss during several of the first nights, and therefore the evidence is uncertain. Appellee did not testify to his loss of profits being $15 per night during the time he actually ran his show, but that he estimated his loss of profits at $15 per night during the week the vaudeville troupe was not able to show on account of lack of lights. Had he sued for $15 per day for the time he ran 'the theater with his own power, the amount would have been about $1,100, instead of $500. The jury must have found for loss of profits during such time in the sum of at least $455, in order to arrive at its verdict, and we find that the testimony supports such finding, and overrule the ninth and tenth assignments of error.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Appellee has filed a remittitur covering the item of $100 special damages mentioned in disposing of the eighth assignment of error, and his motion for rehearing is therefore directed entirely to the ruling made in sustaining the sixth and seventh assignments of error.

[14] He contends that the transaction between himself and Boston consisted of: (1) The sale of (a) realty, (b) corporeal personal property, (c) an interest in a partnership, (d) claims, accounts and other choses in action; (2) the agreement of Boston to make a cash payment and to assume the payment of the partnership debts; and (3) the dissolution, liquidation, and settlement of a copartnership. He contends that he corrected his testimony so as to show that such was the transaction, and that a valid parol transfer was made of the chose in action. He contends, further, that only a part of the entire transaction was reduced to writing, and that the written instrument does not purport to carry into effect, or express in writing, the entire transaction. The instrument does not appear in the record. Appellee designated it as a transfer, which mentions that Boston "deeds" to appellee all of his personal property, including the "Airdome," that he has nothing to do with the Airdome. He testified, further, that the understanding with Boston was that Boston was to "deed" over all the rights and claims and property, and he, Tumlinson, was "to assume all indebtedness on the thing"; that he did not know why the transfer of claims was not included in the instrument; that it was a mistake, a mistake by both of them; that he first found out that morning that the written transfer did not include expressly the word, "claims." This testimony does not show that any part

of the agreement was omitted except that relating to claims. The witness did not testify that the dissolution 'of the partnership was not provided for in the instrument, nor that the consideration was not fully set out, and it appears that while he uses the word, "deed" in lieu of "convey" or "transfer," the instrument not only conveys land, but also personal property. It is also apparent that the witness does not undertake to prove an oral contract of which only a portion was intended to be reduced to writing, but expressly says the writing was intended to cover the matter of claims, and that such matter was omitted only because of a mistake on the part of both parties. We cannot say from his testimony that the written instrument on its face purports to express only a part of the transaction, and his testimony shows affirmatively that the instrument was intended to cover the contract relied upon by him to show his ownership of the claim sued upon. It is frequently the case that only those portions of a contract are reduced to writing which evidence the transfer of land, or which evidence the consideration, and the rule relied upon by appellee is well recognized, but the facts do not bring this case within the rule.

It is of course true that often the written instrument is of such a nature that it shows conclusively, when considered with the testimony relating to the nature of the transaction leading up to its execution and delivery, that the entire agreement or contract was not intended to be embraced therein. But the testimony in this case fails to show such an instrument, but shows a "transfer" which might well have embraced the entire contract, and which appellee admits was intended to include the contract relied upon, and would have included same had it not been omitted by mistake.

The motion is overruled.