## AMERICAN SURETY CO. OF NEW YORK et al. v. HIDALGO COUNTY et al.
### (No. 7507.)

(Court of Civil Appeals of Texas. San Antonio. March 3, 1926. Rehearing Denied April 17, 1926.)

**I. Counties** ⊂⊃99—**Surety on bond of county treasurer held not liable for funds of drainage district which treasurer received and failed to account for (Rev. St. 1911, arts. 1500, 1505, 1506; Vernon's Sayles' Ann. Civ. St. 1914, arts. 2607, 2608, 5987, 5988).**

Surety on bond of county treasurer *held* not liable for funds of drainage district which treasurer received and failed to account for, since drainage commissioners had duty to demand additional bond, in view of Rev. St. 1911, arts. 1500, 1505, 1506; Vernon's Sayles' Ann. Civ. St. 1914, arts. 2607, 2608, 5987, 5988, regardless of constitutionality of statute requiring separate bond or of statute providing that he become treasurer of district and keep account of its moneys.

**2. Principal and surety** ⊂⊃59—**Liabilities of sureties cannot be extended beyond terms of their contracts.**

Liabilities of sureties cannot be extended beyond terms of their contracts, and in case of doubt as to terms of bond surety must be given benefit of the doubt.

### On Motion for Rehearing.

**3. Drains** ⊂⊃20—**County, by appearing for drainage district in suit to recover funds received by county treasurer, did not destroy its separate existence as drainage district with authority to sue and be sued.**

County, by appearing for drainage district in suit to recover funds received by county treasurer and not accounted for, did not destroy its separate existence as drainage district with authority to sue and be sued.

**4. Drains** ⊂⊃19—**County has no right, title, or interest in money belonging to drainage district.**

County has no right, title, or interest in money belonging to drainage district, and its officers have no authority to handle such money except as provided by Drainage Act.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Drains** ⟲⟲2(3)—**Statute providing that county treasurer shall be treasurer of drainage district must be construed as though it preceded statute relative to sale of bonds of district, maintenance fund, and taxes (Vernon's Sayles' Ann. Civ. St. 1914, arts. 2600–2607, 2608).**

Vernon's Sayles' Ann. Civ. St. 1914, art. 2608, providing that county treasurer shall be treasurer of drainage district, must be construed as though it preceded articles 2600–2607 inclusive, relative to sale of bonds of district, maintenance fund, and taxes.

Appeal from District Court, Hidalgo County; A. M. Kent, Judge.

Suit by Hidalgo County, for the use and benefit of Hidalgo County Drainage District No. 1 and another, against the American Surety Company of New York and another. Judgment for plaintiffs, and defendants appeal. Reversed and rendered as to American Surety Company, defendant, and reversed and remanded as to defendant George F. Linesetter, County Treasurer, on rehearing.

Geo. E. Shelley, of Austin, Bryce Ferguson, of Pharr, D. F. Strickland, of Mission, Graham & Graham and R. G. Ransome, all of Brownsville, and D. W. Glasscock, of McAllen, for appellants.

Seabury, George, Taylor & Polk, of Brownsville, and McDaniel & Bounds, of McAllen, for appellees.

FLY, C. J. This suit was instituted by Hidalgo county, for the use and benefit of Hidalgo county drainage district No. 1, and by said drainage district in its own right, against George F. Linesetter, as county treasurer of Hidalgo county, and American Surety Company. The basis of the suit was the defalcation in regard to and appropriation of the funds placed in his hands as treasurer of Hidalgo county belonging to the Hidalgo county drainage district, the surety company being surety on the bond of said Linesetter as treasurer of said county. The suit was instituted in Hidalgo county, but the venue was changed to Willacy county, where it was tried by a jury, and the court gave a peremptory instruction to find for appellees in the sum of $67,785.76. There is really but one pivotal issue in this case, and yet this court is confronted with a transcript of 397 pages, a statement of facts of 248 pages, and voluminous briefs presenting 107 assignments of error, through 27 propositions of law.

[1] The material facts are that Linesetter as treasurer of Hidalgo county received and failed to account for funds of the drainage district amounting to the sum of $67,785.76, for which judgment was rendered. He gave no bond as treasurer of the drainage district, his only bonds being those executed as treasurer of Hidalgo county, upon which the American Surety Company was the surety. The bond sued upon was payable to the county judge, and was for $75,000, and was conditioned as follows:

"Now, therefore, if the said George F. Linesetter shall faithfully perform and discharge all the duties required of him by law as such county treasurer aforesaid and shall pay according to law all money that shall come into his hands as county treasurer and render a just and true account thereof to the commissioners' court at each regular term as required by law, then this obligation to be void, otherwise to remain in full force and effect."

In article 1500, Rev. Stats., the bond is prescribed which was given by Linesetter. That bond was made payable as required in that law to the county judge of Hidalgo county, and was approved by the commissioners' court. He was liable under the terms of that bond for all moneys that came into his hands as county treasurer, and was not bound as such county treasurer for any funds that he might collect in some other capacity. Among the enumerated duties of the county treasurer was "to receive all moneys belonging to the county from whatever source they may be derived and to pay * * * the same as required by law." Article 1505, Rev. Stats. The articles in question were enacted in 1846. It is not provided in the statute as to the treasurer's bond that he is held liable for the moneys of any drainage, navigation, or other kind of district. On the other hand provision is made for another bond when the funds of districts are received by the county treasurer. Title 96 of Vernon's Sayles' Ann. Civ. Stat. 1914, relates to navigation districts, and in article 5987 of the title it is provided that the county treasurer shall keep an accurate account with the district, and in article 5988 it is provided that the county treasurer shall execute a good and sufficient bond, payable to the navigation and canal commissioners, in double the amount of the bond issued by the district, and that bond is approved by the district commissioners. Again, in the case of drainage districts, there are similar provisions. In article 2607 it is made the duty of the county treasurer to open and keep an accurate account of all moneys of the drainage districts, and in article 2608 it is provided that the treasurer of the county shall be the treasurer of the district, and shall execute a good and sufficient bond payable to the drainage commissioners of such district in a sum equal to the amount of bond issued, conditioned for the faithful performance of his duty as treasurer of such district, which bond shall be approved by said drainage commissioners.

If it had been contemplated by the lawmakers that the bond of the county treasurer would cover the funds of drainage districts, no provision would have been made

for separate bonds, but the law would have either been silent as to a separate bond or would have provided that the treasurer's bond given to the county would be sufficient to cover all funds belonging to all districts. In the light of the laws providing for special bonds for districts, it is apparent that it was never contemplated by the legislative mind that a bond given to protect county funds would cover the funds belonging to certain independent districts.

Not only is it apparent that the Legislature passed laws as to special bonds for drainage districts, because it was not conceived that the regular bond of the treasurer to the county would protect the funds of the district, but the very terms of the statute describing the bond of the county treasurer as well as the words of the bond given in compliance with the statute which binds him to perform the duties of his office and pay over according to law the moneys collected as county treasurer, binds him and his sureties only as to county funds. This clearly appears by the law defining his duties: "It shall be the duty of the county treasurer to receive all moneys belonging to the county," not of any subdivision of it, not of any town, city, or district in the county. Rev. Stats. art. 1505. And he is required to keep a just and true account of the receipts and expenditures of all moneys which shall come into his hands by virtue of his office, and of the money due to and from his county. Article 1506. He is required to make reports of all county money to the commissioners' court. These duties are in direct conflict with the provisions of article 2607 which require an accounting to the commissioners of the drainage district.

He becomes the treasurer of the drainage district, not under his bond as county treasurer, but when he executes "a good and sufficient bond," payable not to the county judge as his bond as treasurer of the county, but "payable to the drainage commissioners of such district in a sum equal to the amount of bonds issued, conditioned for the faithful performance of his duty as treasurer of such district, which bond shall be approved by the said drainage commissioners." The language seems to preclude any assumption that the funds of the district shall be taken possession of by the county treasurer under the bond given by him as county treasurer. On the other hand, he obtains possession of such funds and is held liable only under his bond given as treasurer of the drainage district. Article 2608.

[2] The liabilities of sureties are strictissimi juris, and cannot be extended beyond the terms of their contracts. The mere fact that the treasurer had the money of the drainage district and failed to account for it did not render his sureties liable. It was absolutely necessary to show that the money came into his hands as county treasurer un-der the terms of his bond as such treasurer. Heidenheimer v. Brent, 59 Tex. 533; Ryan v. Morton, 65 Tex. 258; Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 291.

The bond of the county treasurer is not to be construed so as to read into it everything that it might be deemed should have been in it. It may be that the Legislature should have provided that the sureties on the bond should be liable for any public moneys coming into the possession of the treasurer, but it is not so provided, and we are confronted with a rule, never to be disregarded in cases like this, that a surety has the right to stand upon the strict terms of his obligation when such terms are ascertainable. This rule is universal, and no covenants that do not clearly appear in the bond can be implied as against the sureties. The courts must take the bond as it is, and not endeavor to make it what it ought to be. The liability of the surety cannot be extended by implication or construction. Brandt, Sur. & Guar. § 106, and authorities cited in footnotes. The authorities support the doctrine that in all cases of doubt as to the terms of a bond the surety must be given the benefit of the doubt.

The question now before this court has been fully considered heretofore in the case of Nueces County v. Nueces County Drainage Dist. (Tex. Civ. App.) 258 S. W. 208, and it was held in construing article 2608:

"Provision is made for paying the treasurer for his services out of funds of the district. It is clear that as to the funds belonging to a drainage district the commissioners of the district have the absolute control, and they may make the county treasurer the district treasurer, and require a bond from him, or they may place their funds in a depository chosen by them, and which depository can be required by them to give a good and sufficient bond, and the treasurer to give a similar bond to that required of him when the county has a depositary. It is the evident intention of the statute to relieve the county of all responsibility for funds placed in the hands of its treasurer by a drainage district, and provide means to the district for having full control of its funds, and to protect itself against any loss that may arise from any misapplication of its funds by its treasurer. If the statute had permitted the drainage district to select any person other than the county treasurer for its treasurer, it would never have been thought for a moment that the county was responsible for him, and yet the treasurer of the county is just as separate from the treasurer of the district as though he were a different person. The bond to be required of the treasurer of the district was a district affair, over which the county had no control, and for an infraction of which the county could not be held liable."

That was held in a case in which it was sought to recover from the county for money collected by its treasurer belonging to the district. The court went farther, and held appropriately to the case now under consideration:

"The bond required by law to be given by the county treasurer does not cover drainage funds, and on that bond the treasurer would not be liable to any one for the district funds."

We have had no reasons presented that would incline us to change the ruling quoted, but we reiterate the same as the law of this case. It is insisted that the ruling cited was not necessary to a decision of the case cited, but we think differently. If it was obiter dictum in the cited case, we think it stated the law, and we adopt it in this case, where it will undoubtedly be pertinent to the issues herein. We deem it the only reasonable construction of the statute.

The money of the drainage district did not go into the hands of the county treasurer by virtue of his office, for the law did not contemplate or provide for the money being taken in hand by virtue of the county treasurer's bond, but provides for another and different bond before the treasurer can take lawful possession. And if the statute requiring the other bond be unconstitutional as claimed by appellees, they can obtain no comfort from that fact, because no provision is made for the drainage district funds to be handled by the county treasurer as such, and he illegally possessed himself of funds not belonging to the county and not named in his bond, and his sureties would not be liable. There was no violation of the official duties of the treasurer in taking possession of the drainage district funds, whatever may have been his personal moral turpitude.

It was the duty of the drainage commissioners to use the means placed in their hands by the plain language of the statute to protect the funds, and, failing to do that, they cannot pass the dire effects of their negligence to the sureties on a bond which did not contemplate liability for drainage district money. The law did not contemplate it, but made full and adequate provision for the protection of such funds. It is very regrettable that the funds should have been misappropriated and lost to the taxpayers of the district through the failure to use the means given by law for their protection, but courts cannot permit the desire to protect taxpayers against the iniquity of disloyal officers to influence their construction of the law. Individual rights must be protected even though it inflicts financial loss upon a whole community.

The judgment will be affirmed as to George F. Linesetter, but will be reversed as to the American Surety Company of New York, and judgment here rendered that appellees take nothing as to said surety company and pay all costs in its behalf expended.

## On Motion for Rehearing.

If, as is contended by appellee Hidalgo county, the law providing that the treasurer of the county may become treasurer of the drainage district is unconstitutional, there can be no possible basis for a judgment based alone on the bond given by the treasurer of the county to protect county funds. If that law is unconstitutional, the county treasurer had no right to take charge of the money of the district, and the surety would no more be liable for that than for any other money, outside of county funds, appropriated by the treasurer. Whether the law be constitutional or unconstitutional is of no importance in this case, because in no event did the treasurer's act in appropriating the district money bind the surety.

[3] If article 2608 is unconstitutional and void, the county treasurer had no more right to touch the money of the drainage district, a subdivision of the couny acting under the authority of a charter from the state of Texas, than he would have had as county treasurer to take possession of the funds of the chartered cities of Mercedes, McAllen, or Edinburg. The drainage district is as much an entity as is the city, and clothed with the authority to "sue and be sued in all courts of this state in the name of such drainage district, and all courts of this state shall take judicial notice of the establishment of all such districts." Hidalgo county in this suit has appeared for it as would the next friend for a minor or a lunatic, but that has not destroyed its separate existence as a drainage district. Matagorda County Drainage District v. Gaines & Corbett (Tex. Civ. App.) 140 S. W. 370.

[4] This court has not held, nor intimated, that article 1500, Revised Statutes, "was limited and partially repealed by implication by the intention of the Legislature in enacting the drainage districts" as claimed by the appellee. The court simply construes the article which holds the surety liable on a treasurer's bond when he fails to "faithfully execute the duties of his office and pay over according to law all moneys which shall come into his hands as county treasurer." If articles 2607 and 2608 are unconstitutional, as strenuously insisted by Hidalgo county, then it was not possible for the county treasurer to be faithfully executing his office when he collected money which did not belong to the county and to which neither he nor the county had any right whatever. If the two articles are constitutional, then the treasurer could not have lawfully come into possession of the money of the district except by complying with the provisions of the two articles of the Statutes. The county has no right, title, or interest in the money belonging to the drainage district, and its officers have no authority to handle such money in any way except as provided by the Drainage Act. Connor v. Zachry, 115 S. W. 867, 117 S. W. 177, 54 Tex. Civ. App. 188. The case cited is in point and decisive as against the claim that the surety is liable for

misappropriation by the county treasurer of the drainage district fund.

[5] This court declines to take the articles 2600 to 2607, inclusive, and construe them separately from article 2608 and in such a way as to nullify the last named article. All of the articles were enacted in 1911 except 2608, which was enacted in 1913 (Vernon's Sayles' Ann. Civ. St. 1914), in lieu of an article 2608 and 2609 as enacted in 1911. The effect of the amendment was to give the drainage district absolute control over its funds. Article 2608 must be construed as though it may have preceded articles 2600 to 2607, inclusive.

A more careful scrutiny of the petitions of appellees leads us to the conclusion that, unless Linesetter be liable under his bond as county treasurer, there is no basis in the pleadings for a judgment against him. We have concluded that the ends of justice would be more nearly attained by reversing the whole judgment and rendering it as heretofore done in favor of the surety company, and remanding the cause, so that the pleadings as to Linesetter may be amended if so desired.

Reversed and rendered as to the surety company, and reversed and remanded as to Linesetter.