### BECK et al. v. SEABOARD LIFE INS. CO.
### No. 2100.

Court of Civil Appeals of Texas. Beaumont.

Feb. 1, 1934.

Adams & McAlister and Seale & Denman, all of Nacogdoches, for appellants.

Campbell, Myer & Foster, of Houston, for appellee.

WALKER, Chief Justice.

On the 21st day of August, 1926, W. W. Beck, as principal, and appellants, Ben T. Wilson and N. W. Smith, as sureties, executed to appellee, Seaboard Life Insurance Company, a bond in the sum of $1,000, reciting:

"Whereas Willie W. Beck of Nacogdoches of the County of Nacogdoches in the State of Texas has been appointed agent of the Seaboard Life Insurance Company, of Houston, Texas, to solicit applications for Life Insurance for said Company, and by reason of said appointment will receive into his hands divers sums of money, promissory notes, and other property of said Company, and may receive commissions and salary advanced to him by said Company before the same are earned or due * * *"

—conditioned that Beck "would truly and correctly account" to appellee "for all sums of money, promissory notes and other property" that came into his possession "by virtue of his appointment and agency." On the same day appellee entered into a written contract with Beck, authorizing him "to canvass for life insurance" for appellee. Immediately after the contract and bond were executed, appellee and Beck modified the written contract by an oral agreement to the following effect, as testified to by appellee's president.

"We had an oral understanding in my office as to the advances and as to his becoming district manager. The contract does not call for him to be district manager. I do not remember the day that happened. It may have been three or four days after the 21st. * * * As to whether the contract here was a part of the same agreement that he was to be district manager and that he was to receive $200.00 a month advances, I would put it

rather the other way, that this is a part of his contract as district manager. I would say that the main contract was as district manager and that this was a part of it."

Beck at once entered upon the discharge of his duties under his contract with appellee as thus modified, and appellee advanced him the $200 per month until February 10, 1927, when appellee again modified its contract in the respects shown by the following letter:

"Houston, Texas, Feb. 10, 1927.

"Mr. W. W. Beck, Stone Fort Natl. Bank Bldg., Nacogdoches, Texas

"My dear Mr. Beck: As you know, it is the plan of this company to build its Agency organization through District Managers; and spire an adequate force of men to cover the territory for which they are responsible.

"In order that you may give first attention and as much time as may be necessary to this task, we are prepared to compensate you as follows:

"(1) Salary of $100.00 per month, payable monthly.

"(2) Bonus of $1.00 per thousand on all paid-for business in excess of $1,000,000.00 produced by your Agency in any calendar year.

"(3) Renewal commissions on all business produced by your Agents, but which are not earned by them because of their failure to qualify for the maximum production under Schedule for. Determining Renewal Service Commissions; provided, however, that, in the event the Agent does not qualify under the three-year rule, the renewal commissions accruing to the District Manager shall be only those for which the Agent had qualified under the above Schedule.

"In addition to the above, we will pay your office and telephone rent, as at present, and will pay your traveling expenses incurred in the actual recruiting and training of Agents.

"You will, of course, continue to write all the personal production possible until such time as the Agency may demand all of your attention.

"In return for the above compensation, we shall expect you to recruit, train and develop an adequate agency force, building your men into a group of successful producing and growing insurance salesmen. During the next six months, we shall expect you to recruit and train one new full-time man per month, so that you will have six full-time men actually producing business on September 1, 1927. And we shall expect your Agency to produce $500,000.00 in paid-for business during 1927.

"This arrangement is to run for six months, from February 15th, at the end of which time it will be reviewed; and, if satisfactory results have not been obtained, will be discontinued.

"Please let us hear from you immediately as to whether or not you wish to accept this proposition.

"If you desire to assume responsibility for additional territory adjacent to that you now have, we shall be glad to confer with you about such territory and your ability to properly care for it."

The contract, as thus modified, remained in full force until February, 1928, when Beck was discharged. From the date of the letter to the date Beck was discharged appellee "advanced" him $100 per month on his commissions just as it had advanced him the $200 prior to the letter, and, in addition thereto, paid him a salary of $100 for his services as district manager. On the date Beck was discharged, as shown by appellee's testimony, he owed appellee the sum of $495.-89, the difference between the "advances" made him, not including his salary of $100 per month under the letter of February 10, 1927, and the money, promissory notes, and other property received by appellee from him under his agency contract. This suit was filed in the county court of Harris county against Beck and appellants, as his sureties, to recover that sum, and upon trial to the court without a jury judgment was rendered in appellee's favor for the amount sued for. The appeal has been duly prosecuted by the sureties, Wilson and Smith.

### Opinion.

█ We agree with the contention of appellants that the contract under which appellee advanced the $200 per month to Beck up to February 10, 1927, and the $100 per month from that date until Beck was discharged, was not the contract upon which they agreed to indemnify appellee. The conditions of the bond were merely that Beck would truly and correctly account for the money, promissory notes, and other property coming into his possession by virtue of his appointment and agency to solicit applications for life insurance. The money sued for was advanced by appellee to Beck under his appointment as district manager, and, incidentally, as testified to by appellee's president, as soliciting agent. Under this statement the sureties were not liable for the advances, under the

following proposition cited by Judge Jackson, speaking for the Amarillo Court of Civil Appeals in Citizens' State Bank of Wheeler v. American Surety Co. et al., 65 S.W.(2d) 778, 779:

" 'The liabilities of sureties are strictissimi juris, and cannot be extended beyond the terms of their contracts.' American Surety Co. of New York et al. v. Hidalgo County et al. (Tex. Civ. App.) 283 S. W. 267, 269. See, also, Miller v. Foard County (Tex. Civ. App.) 59 S.W.(2d) 277."

 The argument of appellee in support of its judgment is that Beck's duties as district manager did not interfere with his duties as soliciting agent; that, in fact, the duties of district manager were within the terms of the bond. This contention is denied. The bond and written contract, construed together, as they must be, show clearly that Beck was bonded only as soliciting agent and that appellee was authorized to advance him money only in that capacity. The money sued for was not advanced Beck as soliciting agent, except that part advanced under the terms of the letter of February 10, 1927, which clearly modified both the original written and verbal contracts, and was, therefore, not within the conditions of the bond.

It follows that the judgment of the lower court against appellants should be reversed and judgment here rendered in their favor and it is accordingly so ordered.